**In re APC CONSTRUCTION, INC., Debtor.**

**TOWN OF COLCHESTER and Gleb Glinka, Trustee, Plaintiffs,**

**v.**

**HINESBURG SAND AND GRAVEL, INC., and Commercial Industrial Electric, Inc., Defendants.**

**Bankruptcy No. 89–00061.
Adv. No. 89–49A.**

United States Bankruptcy Court, D. Vermont.

March 13, 1990.

J. Anderson, and D. Hyman, Goldstein, Manello, Burlington, Vt., for amicus curiae Gerrity Lumber Co. (Gerrity).

G. Glinka, Bertolini, Benning & Glinka, Cabot, Vt., for Trustee, pro se (Trustee).

S. Marshall, Marshall & Marshall, Swanton, Vt., for amicus curiae A.G. Anderson.

M. Meekins, Roesler & Whittlesey, Burlington, Vt., for Town of Colchester, Vt. (Town).

E. Mench, Gravel & Shea, Burlington, Vt., for Hinesburg Sand and Gravel, Inc. (Hinesburg).

## MEMORANDUM OF DECISION

FRANCIS G. CONRAD, Bankruptcy Judge.

This adversary proceeding[1] raises an issue of first impression in our jurisdiction; that is, to what extent may Vermont's contractors ignore the Bankruptcy Code's automatic stay provision and proceed to obtain post-petition writs of attachment in State Court to perfect their pre-petition non-judicial notices of contractors' liens?

We hold the timely perfection of Vermont's contractors' liens meet the Code's statutory lien exception under 11 U.S.C. §§ 101(47), 362(b)(3) and 546. By the same token, failure of the contractor lienor to file the notice of the contractors' lien will not be excused by the fact a debtor has filed bankruptcy. On the other hand, enforcement of the perfected contractors' lien is subject to the Code's automatic stay provision. Moreover, perfection may relate back to a date prior to the date of a debtor's bankruptcy petition. The perfected contractors' lien is excepted from the trustee's preference power under 11 U.S.C. § 547(c)(6).

We also hold that we have core jurisdiction over any action by a sub-contractor lienor who attempts to obtain enforcement of its perfected lien against a non-debtor owner for materials or labor rendered on behalf of a debtor general contractor.

Finally, we hold that State Court trustee process against the debtor contractor and the non-debtor owner is not excepted from the Code's automatic stay because it is a judicial lien. Payments made under trustee process are subject to preference avoidance if the elements of 11 U.S.C. § 547(b) are satisfied.

The material facts are not in dispute. APC Construction Inc. (Debtor) and the Town had an agreement, dated October 27, 1988, for Debtor to perform work on the Town's Airport Park Project (project). The Town owned the land.

During November and December of 1988, Hinesburg sold $4,495.54 of silt to Debtor that was used on the project. Debtor failed to pay for the silt. On January 24, 1989, Hinesburg timely recorded a notice of lien under Vermont's "Contractors' Liens for Labor or Material," 9 Vt. Stat.Ann. §§ 1921, *et seq.*, in the Town Clerk's land records for the unpaid materials and labor furnished on the project.

On February 1, 1989, Hinesburg filed a State Court action against the Town and Debtor. The State Court Clerk set a hearing for March 28, 1989 on Hinesburg's pre-judgment motions for writ of attachment, 12 Vt.Stat.Ann. §§ 3291, *et seq.*, V.R.Civ.P. Rule 4.1, and trustee process, 12 Vt.Stat. Ann. §§ 3011, *et seq.*, V.R.Civ.P. Rule 4.2.

At the March 28, 1989 hearing, the Town advised Hinesburg and the State Court that Debtor had filed, on March 10, 1989, a petition in bankruptcy under 11 U.S.C. §§ 101, *et seq.* Although served with notice, Debtor did not attend the State Court pre-judgment writ of attachment hearing. The State Court stayed the proceedings against Debtor, but ordered a pre-judgment writ of attachment against the "real and personal property" of the Town in the amount of $4,495.54. The State Court also issued a trustee process for a like amount against funds in the Town's bank account.

On January 9, 1989, Commercial Industrial Electric, Inc., (Commercial) filed a

---

1. We have jurisdiction to hear this matter under 28 U.S.C. § 1334(b) and the general reference to this Court by the United States District Court for the District of Vermont. This Memorandum of Decision constitutes findings of fact and conclusions of law under F.R.Civ.P. 52 as made applicable by Rules of Practice and Procedure in Bankruptcy Rule 7052.

"Mechanics' Lien," [2] with the Town Clerk's land records. Commercial's contractors' lien asserted that it had furnished material and/or labor to Debtor for electrical work performed on the Town's project for an unpaid amount due of $2,760.00. Commercial has not appeared or defended this proceeding. There is no other information concerning the status of Commercial's contractors' lien, *i.e.*, we are not informed whether a State Court writ of attachment was timely obtained by Commercial after the recording of its "Mechanics' Lien." There is no evidence that Commercial has perfected its contractors' lien either pre- or post-petition. As discussed *infra*, the act of perfecting, as opposed to enforcement of, a contractors' lien is not subject to the automatic stay. Bankruptcy does not toll or excuse the contractor from obtaining such perfection. Absent evidence of pre- or post-petition perfection, Commercial's unperfected recorded notice of contractors' lien is avoidable by the Trustee.

Following Debtor's failure to complete the project, the Town solicited proposals from qualified subcontractors to complete the project at a cost of $29,265.50. The Town and the Trustee stipulated the amount due and owing Debtor for work completed to be $15,191.92, not including contract retainage of $3,914.28. Hinesburg was not a party to this stipulation.

On July 6, 1989, the Trustee and the Town joined in a "Motion for Order Discharging Mechanics' liens and/or Writs of Attachments" (joint motion). On July 26, 1989, we issued an "Order/Notice" and required service on all parties in interest of the joint motion. Written objection's to the joint motion were to be filed with the Court and served on the movants on or before August 21, 1989.

On September 6, 1989, Hinesburg filed [3] its "Opposition to Joint Motion of Trustee and [Town] for Order Discharging Mechanics' Liens and/or Writs of Attachments."

On October 11, 1989, we heard arguments on the joint motion and Hinesburg's objections, transformed the matter into an adversary proceeding,[4] set a briefing schedule, and, took the matter under advisement.

Before we reach the arguments of the parties and our discussion, we pause to note that two other parties appeared at the October 11, 1989 hearing, Gerrity and A.G. Anderson. Gerrity has filed memorandums with this Court.

Gerrity filed a "Memorandum in Opposition for Order Discharging Mechanics' Lien and/or Writs of Attachment" on the same date as the October 11, 1989 hearing. Gerrity admitted it "has no specific interest in the property affected by [Hinesburg's] attachment or [Commercial's] mechanics' lien" which is the subject matter of this dispute. Gerrity claims, however, it has standing in this proceeding because it is in a similar position to Hinesburg with respect to its contractors' lien status on other property.

Factually, Gerrity claims a contractors' lien against certain property of the Town of Northfield, Vermont by virtue of a recorded notice of lien on February 27, 1989 in Northfield's land records. Gerrity claims it "timely perfected that lien when it obtained a writ of attachment on May 12, 1989, within Vermont's three month perfection period." We were not informed against whom the writ was sought or

---

**2.** Like many contractors, practitioners, and Courts, Commercial interchanges the term "Mechanics' Lien" with Vermont's statutory term "Contractors' Lien." In reference to Vermont law, we use the term "Contractors' Lien" throughout this Memorandum of Decision.

**3.** Hinesburg represents it was not served with the joint motion until August 31, 1989, ten days after which objections to the joint motion were to be received by the Court. We will entertain its objection to the joint motion, however, in view of its representation, and because there were no procedural objections to the timeliness of Hinesburg's response.

**4.** The joint motion should have been brought as an adversary proceeding. Rules of Practice and Procedure in Bankruptcy Rule 7001(2) provides, "An adversary proceeding is governed by the rules of this Part VII. It is a proceeding ... (2) to determine the validity, priority, or extent of a lien or other interest in property...." *See,* 9 *Collier on Bankruptcy,* Para. 7001.05[1], pp. 7001–12–7001–14 (15th Ed.1989).

against who and what the writ was ultimately obtained.

We think we may have mistakenly granted Gerrity standing during the hearing in this proceeding. We hold neither Gerrity nor A.G. Anderson have a personal stake in either the funds that were ultimately turned over to the Trustee by the Town with liens to attach, or the writ of attachment against the project such as would otherwise justify granting them standing [5] as a real party in interest in this proceeding. Rules of Practice and Procedure in Bankruptcy Rule 7017.[6] There is no doubt they have standing as a "party in interest" in the case. The way the matter was brought on by motion may have caused them to believe they had standing. The resolution of this adversary proceeding, however, will dictate the pre-petition status a contractor lienor must attain before proceeding to post-petition perfection. Given the importance of this issue, we treat Gerrity and A.G. Anderson as *Amicus curiae.*

Hinesburg claims the Trustee fails to meet the Code's statutory lien avoidance requirements under 11 U.S.C. § 545,[7] because its statutory lien arose pre-petition. Hinesburg argues its post-petition writ of attachment and trustee process actions were against the Town's real property and bank account respectively over whom the bankruptcy stay did not apply. Additionally, Hinesburg claims it conducted a search of the land records on the day of the State Court pre-judgment writ of attachment hearing and "[a]t that time there was no evidence before the [State] Court to establish the existence of an interest by the debtor or the estate in the money in question. Consequently, the State Court was completely within its authority to issue the writ and trustee process."

The Trustee says the money due from the Town to Debtor is property of the estate. The Trustee cites *Bernstein v. Held (In re Bernstein),* 62 B.R. 545, 549 (Bkrtcy.D.Vt.1986) [8] to support his position that the contractors' lien is "inchoate," be-

---

**5.** Standing requires a personal stake in the outcome of a controversy adequate to ensure that the matter will be presented in an adversary context and will be amendable to judicial resolution. *See, Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556, 569 (1984); *Sierra Club v. Morton,* 405 U.S. 727, 731–32, 92 S.Ct. 1361, 1364, 31 L.Ed.2d 636, 640–41 (1972). The standing issue: "[I]s whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450, 460 (1976) (*quoting, Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343, 354 (1975)) (emphasis in original).

**6.** Rules of Practice and Procedure in Bankruptcy Rule 7017, **Parties Plaintiff and Defendant; Capacity,** provides: "Rule 17 F.R.Civ.P. applies in adversary proceedings. . . ." Federal Rules of Civil Procedure, F.R.Civ.P., Rule 17(a) provides in pertinent part that: "Every action shall be prosecuted in the name of the real party in interest."

**7.** 11 U.S.C. § 545, **Statutory liens,** provides:

The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—

(1) first becomes effective against the debtor—

(A) when a case under this title concerning the debtor is commenced;

(B) when an insolvency proceeding other than under this title concerning the debtor is commenced;

(C) when a custodian is appointed or authorized to take or takes possession;

(D) when the debtor becomes insolvent;

(E) when the debtor's financial condition fails to meet a specified standard; or

(F) at the time of an execution against the property of the debtor levied at the instance of an entity other than the holder of such statutory lien;

(2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists;

(3) is for rent; or

(4) is a lien of distress for rent.

**8.** In reference to contractors' lien or "mechanics' lien," *Bernstein* stated:

Although it is true that the right to file a contractor's lien for labor and materials arises from erecting a building attached to real estate, that right is inchoate until the memorandum required by 9 V.S.A. Section 1923 is recorded and then perfected by attachment or judgment within three (3) months. *Id.,* (held a homestead interest acquired between the notice of lien and the obtaining of a writ of attachment prevented the contractor's lien from attaching to the intervening homestead).

ing both contingent and unliquidated, and is voidable under the "strong arm" powers of 11 U.S.C. § 544(a).[9] The Trustee also claims the contractor's lien is a judicial lien within the meaning of 11 U.S.C. § 101(32),[10] and is a preference under 11 U.S.C. § 547(b).[11] The Trustee adds that as a judicial lien, the contractors' lien is not excepted from a preference under 11 U.S.C. § 547(c)(6).[12]

**9.** 11 U.S.C. § 544, **Trustee as lien creditor and as successor to certain creditors and purchasers,** provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists. (Nov. 6, 1978, P.L. 95–598, Title I, § 544, 92 Stat. 2596; July 10, 1984, P.L. 98–353, Title III, Subtitle H, § 459, 98 Stat. 377). Section 544 was amended by § 459 of the Bankruptcy Amendments and Federal Judgeship Act of 1984 to make it clear that the trustee's rights and powers under this "strong arm clause" are in the disjunctive and not the conjunctive.

**10.** 11 U.S.C. § 101(32) provides:

(32) judicial lien means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding;

**11.** 11 U.S.C. § 547(b), **Preferences,** provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

Gerrity cites 11 U.S.C. § 362(b)(3)[13] and § 546(b)[14] as supporting a contractor lienor's right to pursue a post-petition perfection of its pre-petition lien by obtaining a timely writ of attachment from the State Court.

Gerrity claims a contractors' lien is a "statutory lien" under 11 U.S.C.

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

**12.** 11 U.S.C. § 547(c)(6) provides:

(c) The trustee may not avoid under this section a transfer—

. . . . .

(6) that is the fixing of a statutory lien that is not avoidable under section 545 of this title;

**13.** 11 U.S.C. § 362(b)(3), **Automatic stay,** provides:

(b) The filing of a petition under section 301, 302, or 303 of this title . . . does not operate as a stay—

. . . . .

(3) under subsection (a) of this section, of any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title, or to the extent that such act is accomplished within the period provided under section 547(e)(2)(A) of this title.

**14.** 11 U.S.C. § 546(b), **Limitations on avoiding powers,** provides:

(b) The rights and powers of a trustee under sections 544, 545 and 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement.

§ 101(47) [15] and meets the statutory lien exception of § 547(c)(6). Gerrity directs our attention to § 101(47)'s legislative history and its reference to "mechanics' liens" as an example of a statutory lien. [16]

Gerrity disputes our characterization a contractors' lien as "inchoate," as *dicta* in *Bernstein, supra.* Gerrity cites Vermont State Court decisions that characterize the perfected contractors' lien as granting the lienor specific rights. These rights, according to Gerrity, relate back to the date of the filing of a notice of lien, a date that was prior to Debtor's date of bankruptcy and prior to the Trustee's assumption of an hypothetical bona fide purchaser status.

The Trustee responds to the relation back and inchoate arguments by distinguishing between acts that merely perfect for purposes of notice to third parties and those acts which are required for the enforcement of the lien:

> The argument of [Gerrity] fails to distinguish the *perfection* of a lien, which secures the lien against third parties (and may relate back to the date the lien attached), and the *finality* of a lien, which cannot be accomplished post-petition (and by definition cannot relate back to an earlier time). By statute, before it can assert and enforce the lien, Hinesburg must obtain and record a final judgment....

Trustee's "Supplemental Reply Memorandum in Support of Joint Motion," page 3. The Trustee concludes he can avoid the perfected prejudgment contractors' lien be-

cause the intervention of bankruptcy prevents the necessary contingency of the entry of the final judgment that is required before the contractor lienor may enforce a collection on its lien.

The Trustee distinguishes "contractors' liens" from the "mechanics' liens" enumerated in § 101(47)'s legislative history as representative of statutory liens, because "mechanics', materialmen's and warehousemen's liens" are examples of "possessory liens."

Lastly, the Trustee claims the pre-judgment contractors' lien that has been perfected by a post-petition State Court prejudgment writ of attachment is, nevertheless a judicial lien because it requires a final State Court judgment before it is enforceable. As such, it is voidable by the Trustee as a preference if recorded within 90 days of Debtor's petition.

With arguments of the parties, the issues are framed. Do we have jurisdiction over a non-debtor subcontractor's actions against a non-debtor owner arising from improvements provided by a debtor general contractor on the non-debtor owner's real property? Masked by the main issue is whether the debtor general contractor's rights, if any, in the improvement it provided to the non-debtor owner's real property and funds held by the non-debtor owner as retainage or due non-debtor subcontractor are property of the estate.

If the answer to the first issue is in the affirmative, then what is the nature of the liens the contractors obtain against the

---

**15.** 11 U.S.C. § 101(47) provides:
 (47) statutory lien means lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute;

**16.** 11 U.S.C. § 101(47)'s legislative history:
 Paragraph (38) [redesignated to 47 by § 251 of the Bankruptcy Act of 1986] defines another kind of lien, 'statutory lien.' The definition, derived from current law, states that a statutory lien is a lien arising solely by force of statute on specified circumstances or conditions, and includes a lien of distress for rent (whether statu-

tory, common law, or otherwise). The definition excludes judicial liens and security interests, whether or not they are provided for or are dependent on a statute, and whether or not they are made fully effective by statute. A statutory lien is only one that arises automatically, and is not based on an agreement to give a lien or on judicial action. Mechanics', materialmen's and warehousemen's liens are examples. Tax liens are also included in the definition of statutory lien.
H.R.Rep. No. 595, 95th Cong., 1st Sess. 314 (1977) (refers to paragraph 37 instead of paragraph 38); S.Rep. No. 989, 95th Cong., 2d Sess. 27 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5812–13, 6271 (brackets supplied for clarity).

owner and the funds? Are they "judicial" or "statutory" liens? When do they arise? How are they perfected? May they relate back prior to the filing of a petition in bankruptcy? What are. the parameters of the automatic stay in regard to these liens? Finally, are these liens avoidable by the trustee under the Code's lien avoidance provisions or subject to the Code's preference provisions?

## DISCUSSION

### I. Jurisdiction and Property of Estate.

#### A. Jurisdiction.

Although not articulated as such, Hinesburg challenges our subject matter jurisdiction over the res of their writ of attachment and trustee process, i.e., their writ and trustee process against the Town's (non-debtor) land and bank account.

■ This challenge is not on the movant, rather, the burden of proof remains upon the party asserting that we have jurisdiction to prove it by a preponderance of the evidence. Additionally, the Bankruptcy Court has the independent responsibility to make a 28 U.S.C. § 157(b)(3) [17] determination that this proceeding is or is not a "core" matter or otherwise "related to" the pending Title 11 case. *Unsecured Creditors Committee of Debtor, STN Enterprises, Inc. v. Noyes (In re STN Enterprises, Inc.)*, 73 B.R. 470, 479 (Bkrtcy.D.Vt. 1987) *Aff'd*, slip opinion, Civ. Action No. 87–140, Billings, C.J., (D.Vt. April 22, 1988).

We are aware of the United States Supreme Court's holding in *Northern Pipeline Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and subsequent cases which warn of constitutional problems caused by Article I Courts overreaching their jurisdictional limitations.

28 U.S.C. § 1334 [18] and 28 U.S.C. § 157, [19] respectively, define the source of our sub-

17. 28 U.S.C. § 157(b)(3), **Procedures,** provides: (3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

18. 28 U.S.C. §§ 1334(a) and (b), **Bankruptcy Cases and Proceedings,** provides:
(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

19. 28 U.S.C. § 157, **Procedures,** provides in part:
(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.
(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
(2) Core proceedings include, but are not limited to—
(A) matters concerning the administration of the estate;
(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interest for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
(C) counterclaims by the estate against persons filing claims against the estate;
(D) orders in respect to obtaining credit;
(E) orders to turn over property of the estate;
(F) proceedings to determine, avoid, or recover preferences;
(G) motions to terminate, annul, or modify the automatic stay;
(H) proceedings to determine, avoid, or recover fraudulent conveyances;
(I) determinations as to the dischargeability of particular debts;
(J) objections to discharges;
(K) determinations of the validity, extent, or priority of liens;
(L) confirmations of plans;
(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims

ject matter jurisdiction and authority to enter a final Order. Four categories are provided by this jurisdictional scheme:

a) A case under Title 11;

b) A civil proceeding arising under Title 11;

c) A civil proceeding arising in a case under Title 11; and

d) A civil proceeding related to a case under Title 11.

*Taxel v. Commercebank (In re World Financial Services Center, Inc.)*, 64 B.R. 980, 982, 14 B.C.D. 1306, 15 C.B.C.2d 836, 838 (Bkrtcy.S.D.Cal.1986). See, *Allis-Chalmers Corp. v. Borg–Warner Acceptance Corp. (In re Dr. C. Huff Co., Inc.)*, 44 B.R. 129, 134, 11 C.B.C.2d 1039 (Bkrtcy.W.D.Ky.1984) (three classes of legal controversies: 1. core cases; 2. non-core related cases; and 3. non-core unrelated cases).

Under 28 U.S.C. § 157(a), the District Court may provide that any or all cases under Title 11 and any or all proceedings arising in or related to a case under Title 11 may be referred to the Bankruptcy Judges for the District. The United States District Court for the District of Vermont has referred these cases to this Bankruptcy Court by then Chief Judge Albert W. Coffrin's Order of May 14, 1986.

28 U.S.C. §§ 157(c)(1) and (2) provide that a Bankruptcy Judge may hear non-core proceedings, that are otherwise related to a case under Title 11, but may not enter a final order or judgment without the consent of the parties and must submit proposed findings of fact and conclusions of law for the District Court's de novo review.

■ The distinction between core and non-core is important in at least one respect, that being, a Bankruptcy Court's ability to enter a final order. ·In a core matter we may enter a final order, but we may not in a non-core matter unless the parties agree. *Gulf States Exploration Co. v. Manville Forest Products Corporation (In re Manville Forest Products Corporation)*, 896 F.2d 1384 (2d Cir.1990). We have subject matter jurisdiction to hear either core or non-core-related to proceedings because of the reference.

"Core" is not defined, nor is it limited to the fifteen nonexclusive categories contained in 28 U.S.C. § 157(b)(2). Some Courts have confined themselves to a narrow approach in ascertaining the scope of what matters may be core, while others have taken a more expansive approach. *See, Atlas Fire Apparatus, Inc. v. Beaver (In re Atlas Fire Apparatus, Inc.)*, 56 B.R. 927, 932, 14 C.B.C.2d 429, 13 B.C.D. 1304 (Bkrtcy.E.D.N.C.1986) (listing of representative cases within the two camps).

brought by the estate against persons who have not filed claims against the estate; and

(O) other proceeding affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

(3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law....

(4) Non-core proceedings under section 157(b)(2)(B) of title 28, United States Code, shall not be subject to the mandatory abstention provisions of section 1334(c)(2).

. . . . .

(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

(d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

■ The mere characterization of an adversary proceeding within the core terms of 28 U.S.C. §§ 157(b)(2)(A)–(O) will not be dispositive as to whether the proceeding is core. *Taxel v. Commercebank (In re World Financial Services Center, Inc.), supra*, 64 B.R. at 986, 15 C.B.C.2d at 843 (Bkrtcy.S.D.Cal.1986). Moreover, just because the resolution of this action may turn on the application of State law, this will not, *ipso facto*, turn this adversary proceeding into a non-core proceeding. 28 U.S.C. § 157(b)(3); *Mann v. Kreiss (In re Kreiss)*, 58 B.R. 999, 1004 (E.D.N.Y.1986); *In re Tom Carter Enterprises, Inc.*, 44 B.R. 605, 609 (C.D.Cal.1984).

We are ever mindful of *Marathon's* plurality holding and Article III proscriptions:

[T]he 'adjunct' bankruptcy courts created by the Act [1978, 28 USC § 1471] exercise jurisdiction behind the facade of a grant to the district courts, and of exercising powers far greater than those lodged in the adjuncts approved in either *Crowel [Crowel v. Benson*, 285 US 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932)] or *Raddatz [U.S. v. Raddatz*, 447 US 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)].

*Northern Pipeline Constr. Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 87, 102 S.Ct. 2858, 2880, 73 L.Ed.2d 598 (1982) (brackets supplied for clarity). As one Court so interpreted *Marathon:*

[T]he constitutional ability of an adjunct bankruptcy court to determine state law issues is to be determined by the nature and extent of control by Article III courts and whether there is a nexus between the proceeding involving a state law cause of action and the bankruptcy estate.

*Lessor v. A–Z Associates (In re Lion Capital Group)*, 46 B.R. 850, 856, 12 B.C.D. 840, 12 C.B.C.2d 59 (Bkrtcy.S.D.N.Y.1985), *aff'd*, 63 B.R. 199 (S.D.N.Y.1986). *See also, Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582 (2d Cir.1983); *Mann v. Kreiss (In re Kreiss)*, 58 B.R. 999, 1004 (E.D.N.Y.1986); *In re Satelco*, 58 B.R. 781, 786, 14 C.B.C.2d 487 (Bkrtcy.N.D.Tex. 1986).

*Marathon* only invalidated the jurisdiction of the bankruptcy court to make final determinations in matters that could have been brought in a district court or a state court (i.e., 'related proceedings') ... in no way did *Marathon* implicate the jurisdiction of the bankruptcy courts in other matters within the 'traditional' bankruptcy jurisdiction. The court's invalidation of the jurisdictional grant was on separability grounds, not on the grounds that bankruptcy courts could not adjudicate traditional bankruptcy matters.

*Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1580 (2d Cir.1983) (citation and footnote omitted).

■ This is an action by a trustee to turnover property of the estate, recover a preference, enforce the automatic stay, and determine the validity and extent of liens. This proceeding is clearly a core matter under the alternative jurisdictional provisions of § 157(b)(2)(E) "orders to turn over property of the estate;" § 157(b)(2)(F) "proceedings to determine, avoid, or recover preferences;" § 157(b)(2)(G) "motions to terminate, annul, or modify the automatic stay;" § 157(b)(2)(K) "determinations of the validity, extent, or priority of liens;" or, § 157(b)(2)(O) "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor ... relationship...." *See, Ben Cooper, Inc. v. The Insurance Company of the State of Pennsylvania (In re Ben Cooper)*, 896 F.2d 1394 (2d Cir.1990).

The question remains, however, about our jurisdiction over a sub-contractor's action against a non-debtor owner for materials or labor supplied to a debtor contractor who performed work for the non-debtor owner.

### B. *Federal and State Law.*

■ Recently, the Second Circuit recognized the general rule that property rights in assets of a debtor's estate are determined by State Law. *Morton v. National Bank of New York (In re Morton)*, 866 F.2d 561, 563–64 (2d Cir.1989); *accord,*

*Chittenden Trust Co. v. Sebert Lumber, Co., Inc. (In re Vermont Toy Works, Inc.),* 82 B.R. 258, 289 (Bkrtcy.D.Vt.1987) (presently on appeal).

 Courts have generally held that in the absence of a Congressionally expressed interest, the substantive nature of a creditor's property rights in bankruptcy is defined by reference to State Law. *Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136, 141–42 (1979).

Reference to State law, to the extent of the absence of controlling Federal law, will also define the nature of a debtor's interest as well as the extent of the bankruptcy estate's interest in property. *Robinson v. U.S. Small Business Administration (In re Catamount Dyers, Inc.),* 50 B.R. 788, 789 (1985). Similarly, a creditor's property rights are also defined by State law. *Kors, Inc. v. Howard Bank,* 819 F.2d 19, 22, 16 B.C.D. 162, 164 (2d Cir.1987); *Purcell v. STN Enterprises, Inc. (In re STN Enterprises, Inc.),* 47 B.R. 315, 318 (Bkrtcy.D.Vt. 1985).

Where Congress has acted, however, this Court's Federal powers will supersede conflicting State law to properly administer and enforce the provisions of the bankruptcy laws.

> What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed is a question which, in the absence of overruling federal law, is to be determined by reference to state law. In determining what claims are allowable and how a debtor's assets shall be distributed, a bankruptcy court does not apply the law of the state where it sits.... But bankruptcy courts must administer and enforce the Bankruptcy Act as interpreted by this Court in accordance with authority granted by Congress to determine how and what claims shall be allowed under equitable principles.

*Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156, 161–62, 67 S.Ct. 237, 239, 91 L.Ed. 162, 165–66 (1946) (citations and footnotes omitted). *See also, Butner v. United States, supra,* 440 U.S. at 55, n. 10, 99 S.Ct. at 918, n. 10, 59 L.Ed.2d at 142, n. 10 (1979) (*dicta,* Federal statutory basis for voiding preferential and fraudulent transfers as examples where Federal law modifies State defined property interest); *Lewis v. Manufacturers National Bank,* 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323, 327 (1961) (instances where the trustee has Federal rights that existing creditors may not have).

As we discuss *infra,* Congress was well aware of the State concern for the continued protection of contractors' and materialmen's liens. It expressly excepted these liens from the Code's automatic stay and avoidance powers to permit such liens to be perfected post-petition in State Courts. So long as we are dealing with perfection of a statutory lien, there is no conflict between the Federal and State scheme. Enforcement of such liens is subject to the Code's automatic stay, however. The time for enforcement under State Law is tolled or extended under the Code's § 108(c). Trustee process, on the other hand, is not so protected under the Code. To the extent State Law is in conflict, the Code's treatment of such process as a judicial or statutory lien is determinative.

C. *11 U.S.C. § 541.*

11 U.S.C. § 541(a)(1), **Property of the estate,** provides:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

Before we address the issue of whether Debtor's bankruptcy stayed Hinesburg from obtaining a post-petition State Court pre-judgment writ of attachment and trustee process against the "real and personal property" of the Town, we first must determine whether Hinesburg's writ of attachment and/or trustee process affected property of Debtor's estate.

■ The process of obtaining a State Court pre-judgment writ of attachment and/or trustee process by a sub-contractor against the "goods," "effect," "real" or "personal" property of an non-debtor owner for purposes of perfecting a contractors' lien for labor or materials furnished under a contract with a debtor general contractor impacts on the latter's bankruptcy estate. Under Vermont law, a subcontractor is entitled to a contractors' lien only to the extent any monies are owed from the owner to the general contractor. 9 Vt.Stat. Ann. § 1921(b), *infra.* To the extent the attached property is used to satisfy the enforcement of a subcontractor's judgment, the non-debtor owner, in turn, is entitled to an offset of whatever amount remains due to the debtor general contractor. The bankruptcy estate is thereby diminished by any offset. Moreover, the debtor general contractor may have counterclaims against the subcontractor which may reduce the amount due to the latter. The net, or the sum of the claims, offsets and setoffs, as the case may be, affects the totality of the estate that may be distributed to claimants. Congress has given us core jurisdiction over such matters. 28 U.S.C. § 157(b).

II. Vermont Law.

A. *Vermont's Contractors' Liens for Labor or Material and Writ of Attachment.*

We begin with Vermont's Statutory Law on contractors' liens. 9 Vt.Stat.Ann. § 1921, **Extent of lien; notice,** provides in pertinent parts:

(a) When a contract or agreement is made, whether in writing or not, for erecting, repairing, moving or altering improvements to real property or for furnishing labor or material therefor, the person proceeding in pursuance of such contract or agreement shall have a lien upon such improvements and the lot of land on which the same stand to secure the payment of the same.

(b) A person who by virtue of a contract or agreement, either in writing or parol, with an agent, contractor or subcontrac-

tor of the owner thereof, performs labor or furnishes materials for erecting, repairing, moving or altering such improvements shall have a lien, to secure the payment of the same upon such improvements and the lot of land upon which the same stand, by giving notice in writing to such owner or his or her agent having charge of such property that he or she shall claim a lien for labor or material. Such lien shall extend to the portions of the contract price remaining unpaid at the time such notice is received.

(c) A lien herein provided for shall not continue in force for more than one hundred and twenty days from the time when payment became due for the last of such labor performed or materials furnished unless a notice of such lien is filed in the office of the town clerk as hereinafter provided.

(d) A lien under this section shall not take precedence over a deed or other conveyance to the extent that consideration therefor has been paid in good faith before record of such lien. Such lien shall not take precedence over a mortgage given by the owner thereof upon such building, property or improvements and the lot of land on which the same stand, as security for the payment of money loaned and to be used by such owner in payment of the expenses of the same, if such mortgage is recorded before such lien is filed in the office of the town clerk as hereinafter provided. If such mortgagee shall receive written notice that any lien hereunder is to be claimed, such lien shall take precedence over such mortgage as to all advances thereafter made under such mortgage to such mortgagor, except such advances as the mortgagee may show were actually expended in completing such improvements to real property.

9 Vt.Stat.Ann. § 1922, **Effect of lien,** provides:

Unless he has satisfied or paid the claim upon which such lien is founded after he has received written notice of a lien as provided for in section 1921(b) of this title, such person shall not deed, mort-

gage or otherwise convey property which is subject to a lien as provided herein without disclosing such lien to the vendee or mortgagee in writing or stating the existence of the same in the instrument conveying or mortgaging such property. If he shall fail so to disclose such lien, he shall be liable to the person injured in a civil action on this statute for damages so sustained.

9 Vt.Stat.Ann. § 1923, **Recording notice of lien,** provides:

A person claiming a lien under section 1921 of this title, shall file for record in the clerk's office of the town where such real estate is situated, a written memorandum, signed by him, asserting his claim, which shall charge such real estate with such lien as of the visible commencement of work or delivery of material to the extent and subject to the exceptions provided in sections 1921 and 1922 of this title. Several such liens, asserted as aforesaid, shall be paid pro rata, if the sum due or to become due from the owner thereof is not sufficient to pay the same in full.

9 Vt.Stat.Ann. § 1924, **Action to enforce lien,** provides:

Within three months from the time of filing such memorandum, if such payment is due at the time of such filing and within three months from the time such payment becomes due, if not due at the time of such filing, such person may commence his action for the same, and cause such real estate or other property to be attached thereon. If he obtains judgment in the action, the record of such judgment shall contain a brief statement of the contract upon which the same is founded.

The resulting judgment, when obtained, has the force of a mortgage and the plaintiff has a right of foreclosure for nonpayment. 9 Vt.Stat.Ann. § 1925, **Foreclosure,** provides:

Within five months after the date of such judgment, the plaintiff may cause a certified copy of the record thereof to be recorded in the office of the clerk of the town in which such real estate or other property is situated. Thereupon the same shall be holden for the amount due upon such judgment, with the costs of such copy and recording the same, as if it had been mortgaged for the payment thereof, from the time of the visible commencement of work or delivery of materials, subject, however, to the priorities provided in section 1921 of this title, and the plaintiff may obtain possession and foreclose the defendant's equity of redemption as in case of a mortgage.

Before we examine Vermont's decisional law on contractors' liens, we observe Vermont's statutory and rule provisions governing writs of attachment against the improvements and/or labor performed upon real property (12 Vt.Stat.Ann. §§ 3291–3294 and V.R.Civ.P. Rule 4.1, *infra*) because the attachment process is an indispensable element toward obtaining prejudgment perfection of a contractors' lien.

12 Vt.Stat.Ann. § 3291, **Service of copies of attachment,** provides:

When real estate is attached, in addition to serving the party whose estate is attached, the officer shall leave a true and attested copy of the attachment, with a description of the estate so attached, in the office where by law a deed of that estate is required to be recorded.

12 Vt.Stat.Ann. § 3293, **Discharge of attachment lien,** provides in part:

(a) When an attachment or sequestration of real estate is made in an action at law, such real estate shall be discharged from such attachment lien and the party in whose favor the attachment or sequestration is made, his legal representative or attorney of record in the action shall discharge such attachment upon the record of attachment in the town clerk's office, under any one of the following conditions:

(1) When the action is discontinued or the demand on which it is founded is satisfied, or

(2) When the original writ or process is not returned to the court issuing the same within the time designated by such writ or process, or

(3) When final judgment is entered in such cause and the docket entries or court records of proceedings in such cause do not show that execution was issued therein within the time the attached property is held to respond to the judgment rendered thereon, or

(4) When execution has issued in such cause and returned with officer's return thereon that the execution is satisfied, or

(5) If such execution is not returned to the court issuing the same within two years from the date of issue as determined by the docket entries or court records, provided that service is not stayed by order or decree of any court or by operation of law.

12 Vt.Stat.Ann. § 3295, **Attachment of real estate and personal property**, provides:

A writ of attachment of real estate or personal property shall be filled out as provided by rule adopted by the supreme court and issued to the plaintiff's attorney by the clerk of the court in the county where the action is pending or the property is located. Such writ shall issued only upon the order of a superior or district judge approving attachment in the same manner as is provided by the Vermont Rules of Civil Procedure for attachment of personal property that is to be removed or taken into possession.

V.R.Civ.P. Rule 4.1, **Attachment**, provides in pertinent parts:

(a) **Availability of Attachment.** In any action under these rules ... real estate, goods and chattels, and other property may, in the manner and to the extent provided by law and by this rule, be attached and held to satisfy any judgment for damages and costs which the plaintiff may recover.

(b) **Writ of Attachment: Issuance.**

(1) A writ of attachment shall be filled out as provided in subdivision (c) of this rule and issued to the plaintiff's attorney by the clerk of the court in the county where the action is pending or the property is located. Such writ shall issue only upon the order of a Superior or District Judge approving attachment for a specified amount as provided in paragraph (2) or (3) of this subdivision. The order shall specifically state the grounds of its issuance and shall be incorporated in and made part of the writ.

(2) Except as provided in paragraph (3) of this subdivision, an order of approval may be issued only upon motion after five days' notice to the defendant, or on such shorter notice as the judge may prescribe for good cause shown, and upon hearing and a finding by the court that there is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above any liability insurance, bond, or other security shown by the defendant to be available to satisfy the judgment. The motion shall be filed with the complaint and shall be supported by an affidavit or affidavits meeting the requirements set forth in subdivision (i) of this rule. The motion and affidavit or affidavits, together with the notice of hearing thereon, shall be served upon the defendant in the manner provided in Rule 4 at the same time that the summons and complaint are served upon him.

(3) An order of approval may be issued ex parte upon motion and findings by the court....[20]

---

**20.** V.R.Civ.P. Rule 4.1 has been amended by the Vermont Supreme Court, promulgated December 14, 1989 and effective March 1, 1990. In addition to deletion of obsolete language, minor conforming amendments, and clarification of the requirements for attaching real or personal property, a new paragraph (4) has been added to require prior judicial approval of possessory writs and requires, whether ex parte or after notice, finding specific facts of a clear danger that the attachable property will be removed, concealed, damaged, destroyed or sold to a bona fide purchaser:

(4) An order of approval may be issued for a possessory writ of attachment only upon motion and findings, in addition to the findings required by paragraph (2) or (3), that there is a clear danger shown by specific facts that the attachable property will be sold to a bona fide

Although not binding on Courts,[21] the Reporter's Notes for the 1979 Amendment to V.R.Civ.P. Rule 4.1 discuss contractors' liens. They provide in pertinent part:

> One result of the change is that real estate attachment required under 9 V.S.A. § 1924 to perfect a mechanic's lien must now, like other real estate attachments, be on motion and notice under the rule. Attorneys should take care to commence action on such liens in ample time to permit completion of the attachment within the three-month period provided by the statute after the filing the notice of lien. Otherwise, under the statute the lien will be lost.

Vermont's decisional law has addressed various components of the contractors' lien. Under Vermont law, the right to acquire and enforce a contractors' lien "is a creature of and dependent on statute." *Goodro v. Tarkey*, 112 Vt. 212, 214, 22 A.2d 509 (1941), *citing, Baldwin v. Spear Bros.*, 79 Vt. 43, 50, 64 A. 235 (1905). It is an action at law:

> That such is the intention of the statute is indicated by the fact that a judgment may be obtained as a result thereof and that an attachment of property is to be made as incident to the proceeding. In mechanics' lien cases which have come to this Court on other questions the proceeding under this section or similar prior sections has always been, so far as appears, an action at law, and has not been challenged for that reason.

*Goodro v. Tarkey, supra,* 112 Vt. at 215, 22 A.2d 509.

The Court in *Haigh Lumber Co. v. Drinkwine*, 130 Vt. 120, 287 A.2d 560 (1972), explained the distinction between the "prelien" notice of lien under § 1921(b) which binds the owner and the recorded notice of lien under § 1921(c) which establishes priority among other lienholders:

> The lien established under 9 V.S.A. § 1921(b) is not such as to give notice to the world of the lien upon the property which the claimant of the lien seeks to establish but to place the owner of the property upon notice that if he seeks to alienate the property upon which the lien may be claimed he may suffer resultant damages.

> The notice of the plaintiff to the defendants of its intention to claim a lien under the provisions of 9 V.S.A. § 1921(b) ... is often referred to as a 'prelien notice.'

> But the right to acquire and enforce mechanic's liens is a creature of and dependent upon statutes.

> In Vermont, the grasp of the prelien notice provided for in 9 V.S.A. § 1921(b) is set forth in 9 V.S.A. § 1922 and is intended to prevent the owner of the property who has received such prelien notice from alienating the property so as to defeat the lien placed upon it through the prelien notice. The advantage to the claimant under the prelien notice is that the property upon which the claim is made cannot be transferred in any manner by the owner without notice to the prospective purchaser or mortgagee without being subject to a tort action.

> However, this does not give the giver of the prelien notice a lien on the property which would take precedence over all

purchaser or will be removed, concealed, damaged or destroyed by the defendant, by others or by natural causes, if the property is not taken into possession, or if other good cause is shown.

21. V.R.Civ.P., **Foreword**, p. xiv at x states in part:

> The (Reporter's) Notes are not part of the rules and are not in any way binding upon the Court. They do, however, reflect the deliberations of the Advisory committee and were before the Court when the Tentative Draft was revised and the rules were promulgated. The Notes are thus, like legislative history, of persuasive effect in ascertaining the meaning and

intent of particular provisions and should be of great value to bench and bar in the use and interpretation of the rules.

*Id.,* (parentheticals supplied for clarity). *Accord, Filter Equipment Co., Inc. v. I.B.M. Corp., infra,* 142 Vt. 499, 503, 458 A.2d 1091 (1983) ("As the foreword to the Rules of Civil Procedure indicates, the Notes are not binding upon the Court, but they reflect deliberations of the Advisory Committee, are before the Court before promulgation, and have a persuasive effect similar to that of legislative history in determining the meaning and intent of particular provisions.").

other liens unless he follows up his prelien notice with the filing requirements set forth in 9 V.S.A. § 1921(c).

For us to hold, as the plaintiff argues here and which argument was apparently adopted by the lower court, that the prelien notice gave plaintiff a full lien on the property without following the recording provisions of the statute would create both an unjust and inequitable situation. While, by virtue of 9 V.S.A. § 1922 the owner of the property would be under notice that he could not alienate his interest in the property after such prelien notice was served without the danger of a tort action, such prelien notice would serve as no notice to other creditors that the property was charged with payment of the bills of the creditor that had given prelien notice. The plain purpose of the recording requirement is so that other persons dealing with the property, knowing that a lien has been filed, may also file their own liens if they be so advised and so be entitled to at least a pro rata payment from the property owner if the sum due from the owner to contractor is not sufficient to meet all claims in full.

*Haigh Lumber Co. v. Drinkwine, supra,* 130 Vt. at 126–28, 287 A.2d 560.

Once the contractor lienor has recorded its notice of lien in the land records, he has available to him a remedy that is similar to a mortgage:

> The evident purpose and intent of the law was to give to the party who had filed a proper memorandum in the proper office all and the same rights as a mortgage would give him, executed at the time of filing the memorandum. The remedy provided is as of a mortgage. It could not have been contemplated that vested equitable liens could be destroyed or impaired by any such proceedings.

*Hinckley & Egery Iron Co. v. James,* 51 Vt. 240, 244 (1878).

The recorded notice of lien is subject to prior equitable and legal interests:

> The statute provides that the lien shall attach from the time of filing the claim in the town clerk's office. This of course precludes the idea of its having effect by relation to disturb any rights, either legal or equitable, that may have been created prior to that time. Up to the time of the filing of such claim the property sought to be subjected to such lien may be dealt with in all respects as fully and freely as if it was not liable to be thus subjected.

*Kenny v. Gage,* 33 Vt. 302, 306–07 (1860) (emphasis in original).

The issue before the Vermont Supreme Court in *Filter Equipment Co., Inc. v. I.B.M. Corp.,* 142 Vt. 499, 458 A.2d 1091 (1983), was whether an order for a non-possessory writ of attachment within the three month period under § 1924, *supra,* was required to perfect a contractors' lien. The *Filter* Court refused to abandon *stare decisis.* It held that it was not enough to merely commence suit and move for a writ of attachment within the three month period. Rather, the contractor lienor had to obtain an order for the writ within the three month period prescribed under § 1924 as "a requisite to preserving the statutory lien." *Id.,* 142 Vt. at 503, 458 A.2d 1091, *citing, Reynolds v. Clapper, infra,* 132 Vt. 188, 190, 318 A.2d 173 (1974); *Goodro v. Tarkey, supra,* 112 Vt. 212, 216, 22 A.2d 509, 512 (1941); *Piper v. Hoyt, infra,* 61 Vt. 539, 540, 17 A. 798 (1889).

The *Filter* Court cited due process concerns as part of its rationale for limiting the effect of the § 1921 nonjudicial recorded notice or memorandum of lien:

> [W]e find some merit in defendant's contention that interpreting the statute to permit the mere filing of an action to extend the effective lien created by the recording of the memorandum in the town's clerk's office, for an indefinite period, might well trigger the due process considerations which gave rise to *Terranova [v. AVCO Financial Services of Barre, Inc.,* 396 F.Supp. 1402 (D.Vt. 1975)].* The recorded memorandum, even without attachment, has a practical effect upon alienation, in that disclosure is required, 9 V.S.A. § 1922, and a cloud upon title created.

*Filter Equipment Co., Inc. v. I.B.M. Corp., supra,* 142 Vt. at 502, 458 A.2d 1091 (brackets supplied).

The Court in *Goodro v. Tarkey, supra,* explained how the contractor lienor must obtain a judgment before he may enforce his lien against the owner:

It is not the ordinary action of a creditor against his debtor, but is a special action which the law makes a necessary step in the enforcement of a lien ... and is against property of a person other than the plaintiff's debtor. As a step in such enforcement its purpose must be to determine the amount due the plaintiff which is to be secured by the lien. Attachment of the property upon which the lien is claimed is therefore made a necessary incident to the action, and the time within which the action must be commenced is determined by the date on which the attachment is made. *Piper v. Hoyt,* 61 Vt. 539, 540, 17 A. 798. If the plaintiff obtains judgment the record thereof must contain a brief statement of the contract upon which it is founded. There is no provision for the issuance of execution on the judgment and the only way in which the plaintiff can avail himself thereof, under the lien law, is by causing a certified copy of such record to be recorded in the office of the clerk of the town in which the property to be affected is situated. Thereupon such property becomes holden for the amount due on such judgment with costs of such copy and recording the same, as if it had been mortgaged for the payment thereof, and the plaintiff may obtain possession and foreclose the defendant's equity of redemption.

*Id.,* 112 Vt. at 215–16, 22 A.2d 509.

The Court in *Reynolds v. Clapper,* 132 Vt. 188, 190, 318 A.2d 173 (1974), explained what happens when a contractor lienor fails to obtain a writ of attachment within the three month perfection window:

The provision to enforce a lien under § 1924 contemplates an action at law. This intention of the statute is manifested by the requirement that an attachment of property is to be made as an incident to the proceeding. The judgment obtained in such action is founded on a contract. *Goodro v. Tarkey,* 112 Vt. 212, 216, 22 A.2d 509 (1941). The object of the statute is security and the effect is a preference not available in an ordinary contract action. If the court determines that the attachment in this case was more than three months after the lien was filed and the debt was due when the lien was filed, the attachment was too late to preserve the lien. *Piper v. Hoyt, supra,* 61 Vt. at 540 [17 A. 798]. The action, however, does not necessarily abate because of a lack of adherence with the time factor. The writ could have issued as well without the statute (now § 1924), in common with other creditors. *Id.*

*Reynolds v. Clapper, supra,* 132 Vt. at 190, 318 A.2d 173.

The failure to perfect a recorded notice of lien by obtaining a writ of attachment bars the *in rem* action and the lien is lost. *Piper v. Hoyt,* 61 Vt. 539, 540, 17 A. 798 (1889); *Goodro v. Tarkey, supra,* 112 Vt. at 216, 22 A.2d 509 ("but it is an action *quasi in rem,* which could result only in a judgment affecting the liability of the particular property, and operating only as between the particular parties to the proceeding.").

The *in personam* action on contract upon which a personal judgment might be obtained against a debtor, however, is not lost despite the failure of the contractor lienor to obtain a timely writ of attachment. *Woodbury Lumber v. McIntosh and Abare,* 125 Vt. 154, 156, 211 A.2d 240 (1965) (special lien action did not bar a suit in contract).

As a general rule, the owner is liable only to the extent of his contract or agreement with the contractor despite the number of contractor liens or their amounts that may be recorded against the owner's real property. *King v. Hoadley,* 112 Vt. 394, 396, 26 A.2d 103 (1942).

An exception to the general rule was formed in *Cote v. Bloomfield,* 128 Vt. 306, 262 A.2d 467 (1970) and *King v. Hoadley,* 112 Vt. 394, 397, 26 A.2d 103 (1942) where

the Court held an owner is entitled to apply the affirmative defense of "off-set" against the amount due a subcontractor for the cost to the owner to complete the contractor's unfinished work:

The obligation of the defendant [owner], under the lien, was only as to sum of money, if any, which was due under the contract, but allowing him to deduct from the sum due under the contract any off-set he had against the main contractor for expenditures made by him to complete the building as specified in the contract between the defendant and the main contractor.

*Id.*, 128 Vt. at 311, 262 A.2d at 471, (brackets supplied for clarity).

The Court in *Nadeau Lumber, Inc. v. Benoit*, 140 Vt. 298, 300, 437 A.2d 1108 (1981), extended *Cote* and *King* to hold that an owner is entitle to offset against the amount due the owner's cost to correct defective workmanship.

Finally, neither the contractor nor the owner may defeat a subcontractors' lien by transferring or assigning the contractual right of the general contractor to receive payments from the owner to say there was no amount due at the time the lien was asserted:

The lien created by our statute is a direct lien and therefore the assignment cannot affect the lien. . . . If this were not so, a contractor could defeat the lien of a subcontractor by merely transferring the fund due or to become due by giving an assignment and the statute creating a lien in favor of subcontractors or mechanics would become a nullity, as the fund might be transferred immediately upon making the contract to erect the building.

*Springfield Cooperative Freeze Locker Plant, Inc. v. E.R. Wiggins*, 115 Vt. 445, 453, 63 A.2d 182 (1949).

Vermont's decisional law shows the interaction between and among owners, subcontractors, and general contractors is quite involved. With its allowance for retroactive perfection, setoffs, and pro rata distributions, we hold a debtor's general contractor's lien rights *vis a vis* non-debtor owners and subcontractors, requires the exercise of a Bankruptcy Court scrutiny.

### B. *Vermont's Trustee Process.*

In the proceeding *sub judice*, Hinesburg obtained trustee process against the Town's bank account in the amount due on its contract with Debtor. Vermont's trustee process is governed by 12 Vt.Stat.Ann. §§ 3011, *et seq.*, and V.R.Civ.P. Rule 4.2.

12 Vt.Stat.Ann. § 3011, **Actions,** provides:

Trustee process may be used in any civil action commenced in a superior court or the district court except in actions for malicious prosecution, libel, slander or alienation of affections.

12 Vt.Stat.Ann. § 3013, **Who may be summoned as trustee generally; property subject to process,** provides:

A person or corporation . . . may be summoned as a trustee of the defendant. The goods, effects or credits of the defendant which are in the hands of such trustee at the time of the service of the writ upon him, or which come into his hands or possession before disclosure, shall thereby be attached and held to respond to final judgment in the cause, except as hereinafter provided.

12 Vt.Stat.Ann. § 3018, **Debts absolutely due, but not payable,** provides:

Any money or other thing due the defendant may be attached by trustee process before it has become payable, provided it is due absolutely and without contingency. The trustee shall not be compelled to pay or deliver it before the time fixed by the contract.

12 Vt.Stat.Ann. § 3019, **Debts contingent; judgment subject to execution,** provides:

A person shall not be adjudged a trustee by reason of any money or other thing due from him to the principal defendant, unless it is due absolutely and without contingency at the time of the service of the writ upon him, or by reason of a debt due from him on a judgment, so long as he is liable to an execution on the judgment.

The procedure for trustee process is governed by V.R.Civ.P. Rule 4.2, **Trustee Process**, which provides in pertinent parts:

**(a) Availability of Trustee Process.** In any personal action in which an attachment would be available under Rule 4.1(a), trustee process may be used, in the manner and to the extent provided by law and by this rule, to attach goods, effects, or credits of the defendant in the hands of a third person for the purpose of securing satisfaction of any judgment for damages and costs which the plaintiff may recover.

**(b) Summons to Trustee: Issuance.**

(1) Each summons to a trustee shall be filled out as provided in subdivision (c) of this rule and issued to the plaintiff's attorney by the clerk of the court in the county where the action is pending or the trustee resides. Such summons shall issue only on approval as required for writ of attachment in Rule 4.1(b)(1).

(2) Except as provided in paragraph (3) of this subdivision, an order or approval may be issued only upon motion after notice, hearing, and findings as required for writ of attachment in Rule 4.1(b)(2).

(3) An order of approval may be issued ex parte upon motion and findings by the court.

**(c) Same: Form.** The summons to a trustee shall be dated and signed by the clerk. It shall contain the name of the court, the names of the parties, and the order of approval issued under subdivision (b) of this rule; be directed to the trustee, state the name and address of the plaintiff's attorney, the amount for which the goods, effects, or credits of the defendant are attached on trustee process, and the time within which these rules require the trustee to make disclosure; and shall notify the trustee that in case of the trustee's failure to do so the trustee will be defaulted and adjudged trustee as alleged. The amount so attached shall not exceed the amount specified in the order of approval.

**(d) Same: Service; Interrogatories.** Any trustee process shall be served within 30 days after the filing of the complaint. Plaintiff's attorney shall also serve a disclosure form on the trustee along with the summons. If the answers on the disclosure form do not provide adequate information, plaintiff may submit interrogatories to the trustee pursuant to Rule 33, but such interrogatories must be concise. A list of exemptions also shall be served on the defendant and the trustee.

**(f) Disclosure by Trustee.** A trustee shall serve a disclosure under oath within 30 days after the service of the trustee summons upon the trustee, unless the court otherwise directs.

**(i) Subsequent or Additional, Trustee Process.** If no trustee process has issued or if any trustee process has issued and cause is shown why the order of approval should be amended to authorize additional attachment, the court on motion may issue an order of approval for attachment on trustee process against the same or an additional trustee. The order may issue at any time before judgment, and, notwithstanding the pendency of appeal, at any time after judgment and before execution may issue.

**(k) Post-Judgment Trustee Process.** Where issuance of post-judgment trustee process is authorized by law, the judgment on which execution has issued shall be deemed an order of approval authorizing the clerk to issue one or more summons to any trustee specified by the judgment creditor.

The Vermont Supreme Court explained: Under the provisions of 12 V.S.A. Chapter 121 and V.R.C.P. 4.2 trustee process can be implemented simultaneously with or after the filing of a complaint in a contract action. The trustee portion of the process is a special form of attachment, invoked by a motion and hearing under V.R.C.P. 4.1(b)(2). If supportive findings are made by the court an order of approval may authorize the issuance of a summons directed to and to be served upon the named trustee. This service of process is the procedural device by which the court assumes the au-

thority to reassign to the plaintiff assets of the trustee that are subject to a bona fide claim of the defendant.

Without completion of the process to the point of disclosure no valid judgment can issue against any trustee assets.

*A. Emilo Building Supply, Inc. v. R.E. Bean Construction Co., Inc.*, 146 Vt. 198, 202–03, 503 A.2d 528, 530 (1985) (procedural due process compliance with V.R. Civ.P. Rule 4.2 required to bring the putative trustee within the Court's jurisdiction).

Trustee process reaches only those debts actually owed to the principal defendant/debtor from another creditor under 12 Vt.Stat.Ann. § 3019, or which is in fact due to the principal defendant/debtor. 12 Vt. Stat.Ann. § 3018.

A close definition of the right that can be reached, and also of the obligation of the debtor-trustee when brought into litigation, is essential. Both the statutes and our cases emphasize that the debt must be one actually owed to the defendant at the time of service of trustee process, or which comes into his hands before he files his disclosure.

Otherwise the reach of trustee process is directed to indebtedness in fact due the defendant. 12 V.S.A. § 3018.

*First Wisconsin Mortgage Trust v. Wyman's, Inc.*, 139 Vt. 350, 353–54, 428 A.2d 1119, 1122 (1981); *Sullivan v. R.E. Bean Construction Co., Inc.*, 147 Vt. 310, 312–13, 515 A.2d 1063 (1986).

After proper service of trustee process, the trustee must make disclosure and await judgment before making payments, unless legally authorized to do otherwise. *Peck v. E.T. Monahan and Trustee*, 87 Vt. 312, 314–15, 89 A. 358 (1914). Service of trustee process freezes the funds and forbids any change in ownership pending a judicial determination of the trustee's responsibility. 12 Vt.Stat.Ann. § 3013; *First Wisconsin Mortgage Trust v. Wyman's, Inc.*, supra, 139 Vt. at 356, 428 A.2d 1119, *citing, J.W. Ellis & Co. v. Goodnow*, 40 Vt. 237, 240–41 (1867).

Finally, failure of the trustee to serve its disclosure statement or to fully disclose its relationship to the principal defendant may result in a default against the trustee with its goods, chattels, and estate held chargeable to the extent of the judgment recovered by the plaintiff. 12 Vt.Stat.Ann. §§ 3062, 3063. *Parker v. Wilson*, 61 Vt. 116, 118, 17 A. 747, 747–48 (1888); *Holmes v. Clark*, 46 Vt. 22, 27 (1873).

Vermont's trustee process, thus, is a judicial process. Its reach is directed to indebtedness due a plaintiff. Accordingly, in a contractors' lien case, its reach would be to a debtor or non-debtor alike. We discuss below whether it is treated as a "judicial" lien for Bankruptcy Code purposes.

## III. Automatic Stay.

### A. *11 U.S.C. § 362(a)(4).*

11 U.S.C. § 362(a)(4) provides:

(a) Except as provided in subsection (b) of this section, a petition filed under sections 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

(4) any act to create, perfect, or enforce any lien against property of the estate.

In *Morton v. National Bank of New York (In re Morton)*, supra, the Second Circuit emphasized the limitation of § 362(a)(4):

The automatic stay provision of the bankruptcy code, 11 U.S.C. § 362(a), operates only as a stay of "any act to *create, perfect, or enforce*" a lien against the property of the estate. 11 U.S.C. § 362(a)(4). Significantly, the section does not explicitly prohibit acts to *extend, continue,* or *renew* otherwise valid statutory liens, nor is there any indication from the legislative history that congress intended such a result.

*Id.*, 866 F.2d at 564 (2d Cir.1989) (emphasis in original).

The *Morton* Court addressed the issue of whether the intervention of a debtor's bankruptcy invoked § 362(a)(4) to excuse a creditor from compliance with a State law requirement that a creditor must renew its judgment lien every ten years.

*Morton* held, *inter alia*, there was no conflict between the Bankruptcy Code and the State law judgment lien extension requirement. Section 362 did not relieve the creditor from its State law requirement to give notice and extend its lien:

> Action by a lien holder under § 5203(b) [New York judgment lien extension requirement] does not result in an enlargement of the lien, nor does it threaten property of the estate which would otherwise be available to general creditors. To the contrary, extension under § 5203(b) simply allows the holder of a valid lien to maintain the status quo—a policy not adverse to bankruptcy law, but rather in complete harmony with it.
>
> Of course, if New York law provided that the only way to preserve the lien was to execute on it within a given period of time, or if through extension the amount of the lien could be enlarged, or if somehow under § 5203(b) the priority of the lien could be enhanced, an actual conflict with § 362(a) might arise that would suspend the state law. Here however, we cannot find ... any federal interest requiring, solely because of the ongoing bankruptcy proceedings, that a lienholder be relieved of any requirement to give notice and extend its lien in state court, especially when the very existence of that lien is created and defined by state law and when the extension will have no adverse effect on any party or property involved in the bankruptcy proceeding.

*Id.*, 866 F.2d at 564 (2d Cir.1989) (brackets supplied, citations omitted).

*Morton* cited with approval the Bankruptcy Act case *In re Willax*, 93 F.2d 293 (2d Cir.1937). In *Willax*, appellants filed mechanics' liens against the debtor's property for work they had performed. The debtor filed a petition for a composition or extension of time under the Bankruptcy Act. The mechanics' lienors filed claims in that proceeding as secured creditors. While the mechanics' liens were still valid, the debtor's petition for composition was dismissed and was adjudicated a bankrupt. Over a year later, the property was sold with liens to attach to proceeds. The Referee in bankruptcy determined the claimants were unsecured because their mechanics' liens were lost for failure to take one of the following requisites within one year of filing their notices of liens: (1) the lienors failed to commence actions to foreclose, or (2) to obtain a continuance from the Court, and (3) were not made defendants in an action to foreclose another lien within one year after the original notices of lien had been filed. The Second Circuit upheld the Referee's rejection of the claimants' argument that the debtor's bankruptcy relieved them of the necessity for following State procedure to timely extend their liens:

> [T]he bankruptcy court had jurisdiction over the property covered by the liens in question ... and ... could stay enforcement of the liens in any other court. [T]here is nothing in the statute that enables the bankruptcy court to recognize a lien which the lienor has failed to continue in the way prescribed by the state law. Mechanics' liens are creatures of the law of the state where the real property is situated—in the present case New York—and that law governs the method whereby they may be continued as well as the mode of their creation. The bankruptcy court never enjoined proceedings to continue the liens in question, nor do we find any power given it to make an order to that effect. Its power ... is limited to enjoining 'enforcement' of the liens. It has frequently been held that an adjudication in bankruptcy does not prevent a claimant from perfecting a lien as distinguished from enforcing it....

*Id.*, 93 F.2d at 295.

Three years after *Willax*, the Second Circuit decided *Lockhart v. Garden City Bank & Trust Co.*, 116 F.2d 658 (2d Cir. 1940), also cited with approval by *Morton, supra*, 866 F.2d at 565. In *Lockhart*, the Court was confronted with the validity and effect of a chattel mortgage which was originally duly filed and recorded. It had not been refiled within a year as required under State law, however, because the mortgagee had repossessed the chattels from the mortgagor during the latter's bankruptcy proceedings. The bankruptcy

trustee was refused an order declaring the mortgage void as against him for lack of refiling. The Second Circuit affirmed this result on the grounds that the rights of the parties were fixed at the date of the initiation of the bankruptcy proceeding, and, at that time, the chattel mortgage was valid and was not excepted from the bankruptcy stay.

The *Lockhart* Court held that secured creditors' liens generally remain valid and need not be renewed during bankruptcy proceedings unless the Bankruptcy Act and State law required otherwise.

> It is settled ... that property in the actual or constructive possession of the bankrupt when the petition is filed vests in the trustee and becomes subject to the exclusive jurisdiction of the bankruptcy court. The indicated conclusion is, therefore, that leave of the court is necessary to the rightfully removal of property from the possession of the trustee or debtor-in-possession under an arrangement proceeding.
>
> Under ordinary bankruptcy, too, the rights of secured creditors may not be curtailed ... and the object of the court's control is not necessarily the curtailment of the rights, but the supervision of their enforcement ... to protect the interests of other creditors, interests which would be substantial if the property proved to be more than sufficient to satisfy the secured debts.
>
> Thus the critical time at which the trustee's rights are to be determined is the date of bankruptcy. Hence in general no creditors' liens acquire validity after the filing of the petition; this is emphasized by the exceptional cases otherwise— ... statutory liens for employees, contractors, mechanics, landlords and others, and for taxes, though not perfected until after bankruptcy. It should equally follow, we believe, that liens good at this time do not lose their validity as against the trustee unless the statute so expressly provides.

*Id.,* 116 F.2d at 659–61 (citations and text omitted).

*Morton* concluded from the application of *Willax* and *Lockhart, supra,* that because the lien before them was statutory,[22] the bank was not relieved under § 362 of its requirement to extend its lien before the lapse of the ten-year period.

> Thus, at least as to statutory liens, *Lockhart* was in complete harmony with *Willax:* If the lien did not fall under the statutory 'exceptional cases otherwise' category, or if no statute expressly required extension, no action on the part of the lienholder was necessary. But if the lien fell under one of the above exceptions, then the lienholder had to take the action mandated by state law or lose its lien.
>
> There is no question that the lien at issue in this case is statutory and that state law 'expressly provides' that the lien expires after ten years if not extended. Accordingly, we hold that because this lien fits under the 'exceptional cases otherwise' category of *Willax* and *Lockhart,* and because extension of the lien as authorize by state law would create no conflict with any provision of the bankruptcy code, § 362(a) by itself did not relieve the bank of the requirement to extend its lien before the initial ten-year period expired.

*Morton, supra,* 866 F.2d at 565 (held bank was free to seek an application for an extension of its statutory lien in State Court without violating § 362(a)(4). But 11 U.S.C. § 108(c) (discussed *infra*) makes such an application unnecessary for the continuation of the lien.). Before we discuss § 108(c) we need to review the interaction between § 362(b)(3) and 11 U.S.C. § 546(b).

B. *11 U.S.C. § 362(b)(3) and 11 U.S.C. § 546(b).*

11 U.S.C. § 362(b)(3) provides:

> (b) The filing of a petition under section 301, 302, or 303 of this title ... *does not operate as a stay—*

22. The *Morton* Court assumes without discussion that they were dealing with a "statutory lien." We pause to note § 362(a)(4) does not specify what kind of lien, *i.e.,* judicial or statutory, is required to trigger that section.

*(3) under subsection (a) of this section, of any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title.*

*Id.,* (emphasis supplied).

11 U.S.C. § 546(b), **Limitations on avoiding powers,** provides:

(b) The rights and powers of a trustee under sections 544, 545 and 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement.

11 U.S.C. § 546(b) was derived from former Section 67(c)(1)(B), 11 U.S.C. § 107, of the Bankruptcy Act of 1898, which provided:

(B) every statutory lien which is not perfected or enforceable at the date of bankruptcy against one acquiring the rights of a bona fide purchaser from the debtor on that date, whether or not such purchaser exists: *Provided,* That where a statutory lien is not invalid at the date of bankruptcy against the trustee under subdivision c of section 70 of this Act and is required by applicable lien law to be perfected in order to be valid against a subsequent bona fide purchaser, such a lien may nevertheless be valid under this subdivision if perfected within the time permitted by and in accordance with the requirements of such law: *And Provided Further,* That if applicable lien law requires a lien valid against the trustee under section 70, subdivision c, to be perfected by the seizure of property, it shall instead be perfected as permitted by this subdivision c of section 67 by filing notice thereof with the court.

*Id.,* Section 67(c)(1)(B) of the Bankruptcy Act of 1898, reprinted in Appendix 1 *Collier on Bankruptcy,* p. 86 (15th Ed.1989).

The House and Senate Reports (Reform Act of 1978) for Section 546(b) provides:

The trustee's rights and powers under certain of the avoiding powers are limited by section 546. First, if an interest holder against whom the trustee would have rights still has, under applicable nonbankruptcy law, and as of the date of the petition, the opportunity to perfect his lien against an intervening interest holder, then he may perfect his interest against the trustee. If applicable law requires seizure for perfection, then perfection is by notice to the trustee instead. The rights granted to a creditor under this subsection prevail over the trustee only if the transferee has perfected the transfer in accordance with applicable law, and that perfection relates back to a date that is before the commencement of the case.

The phrase 'generally applicable law' relates to those provisions of applicable law that apply both in bankruptcy cases and outside of bankruptcy cases. For example, many State laws, under the Uniform Commercial Code, permit perfection of a purchase-money security interest to relate back to defeat an earlier perfected non-purchase-money security interest if the former was perfected within ten days. UCC § 9–301(2). Such perfection would then be able to defeat a hypothetical judicial lien creditor on the date of the filing of the petition. The purpose of the subsection is to protect, in spite of the surprise intervention of bankruptcy petition, those whom State law protects by allowing them to perfect their liens or interests as of an effective date that is earlier than the date of perfection. It is not designed too (sic) give the States an opportunity to enact disguised priorities in the form of liens that apply only in bankruptcy cases.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 371 (1977); S.Rep. No. 989, 95th Cong., 2d Sess.

86 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5872, 6327, reprinted in 4 *Norton Bankruptcy Law and Practice*, p. 464.

Collier explains the operation of § 546(b) as:

Section 546(b) limits the trustee's rights under sections 544 [trustee as lien creditor and as successor to certain creditors and purchasers], 545 [power to avoid statutory liens], and 549 [power to avoid post-petition transactions]. Because the trustee's power as intervening creditor is limited by the right under 'any generally applicable law' of an interest holder to perfect, the intervention of a petition under title 11 should not cut off an interest holder's opportunity to perfect when the interest holder could have perfected, if bankruptcy had not intervened, against an entity acquiring rights in the property before the perfection date. There is no time limit other than as provided under nonbankruptcy law, and section 362(b)(3) provides an exception from the automatic stay to permit such perfection.

The same analysis [UCC 9–301(2) ten day relation back of purchase money security interest will defeat an intervening bankruptcy trustee] would also apply to the holder of a mechanic's lien, if state law would permit perfection to relate back so as to defeat an intervening lien creditor.

4 *Collier on Bankruptcy*, Paragraph 546.-03[3], pp. 546–12–546–14 (15th Ed.1989) (brackets supplied for clarity).

Bankruptcy Judge Marro contrasted § 362(a)(4) with § 362(b)(3) and § 546(b):

It is through the comparison of subsection (a), paragraph (4) and subsection (b), paragraph (3) of Section 362 of the Code, that the court concludes that a creditor's underlying interest must be created prior to the petition, and that the interest need only be perfected after the petition date, so as to be excepted from the automatic stay.

The court finds further substantiation for its distinction in Section 546(b), where the Code makes specific reference to perfection, and not creation. As stated in Section 546(b). The rights and powers of a trustee ... are subject to any generally applicable law that permits *perfection* of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. It is by the Code's explicit language that leads the court to the conclusion that the perfection of an interest, and the creation of an interest are not congruent as applied to the automatic stay. Thus, this court should not treat them as the same unless the Code specifically provides for such treatment.

*In re New England Carpet Company, Inc.*, 26 B.R. 934, 939 (Bkrtcy.D.Vt.1983) (emphasis in original) (creation of State personal property tax liens by filing notice of tax lien, as opposed to perfection, was not excepted from the automatic stay where Vermont statute did not create an underlying lien or interest prior to the filing of notice).

All that is permitted under § 362(b)(3) as an exception to the § 362(a)'s automatic stay is perfection, not creation or enforcement of a lien. *See,* 2 *Collier on Bankruptcy,* paragraph 362.05[3], pp. 362–45 (15th Ed.1989).

This is an issue of first impression in Vermont. How does the "relation back" rule apply in the context of the perfection of contractors' liens interrupted by bankruptcy? We know that Vermont law on contractor's liens will, subject to exceptions not relevant here, relate back the recorded notice of contractors' liens, and the ultimate foreclosure judgment, to the "visible commencement of work or delivery of materials." 9 Vt.Stat.Ann. §§ 1923, 1925, *supra; Haigh Lumber Co. v. Drinkwine*, 130 Vt. 120, 287 A.2d 560 (1972). We also know that a writ of attachment must be timely had to preserve the lien or the *in rem* right is lost. 9 Vt.Stat.Ann. § 1924, *supra.*

To be sure, an examination of the peculiarities of each State's law on mechanics' or contractors' liens is required to determine if applicable State law will permit the application of the relation back rule. A review of decisions from our Sister Courts reveals there are representative State and Federal Courts where the principle of the

relation back rule is accepted when perfection of contractors' liens are interrupted by bankruptcy.

We begin with an examination of how the relation back rule works. In *Lincoln Savings Bank, FSB v. Suffolk County Treasurer (In re Parr Meadows Racing Association, Inc.)*, 880 F.2d 1540, 19 B.C.D. 1125 (2d Cir.1989), *cert. denied, Suffolk County Treasurer v. Barr*, —— U.S. ——, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990), the Second Circuit held that § 362(a)(4) prohibits creation of a local tax lien unless a pre-petition interest in property exists that qualifies under § 362(b)(3) and § 546(b) and that, as provided by State law, the interest is timely perfected post-petition. The Court then looked to New York law and held the county's tax status date was an "interest in property" within the meaning of § 546(b). Thus, to the extent the county's interest arose pre-petition, it was permitted to obtain post-petition perfection by obtaining tax liens which related back to the pre-petition tax status date.

As for post-petition tax liens where the county did not have a pre-petition interest:

> [A]s to all remaining liens, because the county did not possess, prior to the filing of the bankruptcy petition, a sufficient 'interest in property' to qualify for the § 546(b) exception, we must conclude that creation and perfection of each of these later liens violated the automatic stay. Hence, each of these remaining liens is void, and the county stands in the shoes of an unsecured creditor as to the amount due for each of those tax years.

*Lincoln Savings Bank, FSB v. Suffolk County Treasurer (In re Parr Meadows Racing Association, Inc.), supra,* 880 F.2d at 1548 (2d Cir.1989). *Accord, Equibank, N.A. v. Wheeling–Pittsburgh Steel Corporation,* 884 F.2d 80, 85–86 (3d Cir.1989).

The Second Circuit has yet to apply the relation back rule to contractors' liens under the Bankruptcy Code, but it has addressed various components of these liens under the Bankruptcy Act.

In *In re Emslie,* 4 Am.B.R. 126, 102 F. 291 (2d Cir.1900), the subcontractor filed a notice of lien against the owner's real estate. The day after the general contractor was later adjudicated bankrupt, the subcontractor commenced an action to foreclose its lien. The Bankruptcy Court stayed the State Court action. Aside from the Second Circuit's determination that the subcontractor's notice of lien was invalid for insufficient notice, the Court went to great lengths to differ from the opinion of the Court below that, irrespective of the insufficient notice, the lien was void as against the trustee in bankruptcy. The Court determined that the lien was not created under applicable State law until the filing of the notice of lien, and that notice was essential to maintain an action to foreclose on the lien. Mechanics' liens arise by operation of statute or by the act of the lienor in filing the statutory notice. The liens enumerated in Section 67 of the Bankruptcy Act of 1898, in respect to which a trustee acquired a better title than did the bankrupt, did not include a mechanics' lien properly noticed and filed within the statutory period. This was true even though the lien was filed four months after the bankruptcy petition.

The *Emslie* Court agreed with the conclusion reached by the Seventh Circuit in *In re Kerby–Denis Company,* 2 Am.B.R. 402, 95 F. 116, that Congress did not intend to avoid mechanics' liens and upheld the stay of the State Court action. *Emslie* found immaterial the Bankruptcy Court's distinction that *Kerby–Denis* dealt with a lien created by the furnishing of labor, whereas the lien in *Emslie* was not created until the notice of lien was filed:

> We do not discover any substantial distinction between the two statutes. In one the lien is not given unless the notice is filed; in the other, although it arises when the labor or materials are furnished, it is lost unless a notice is filed within a specified time. The object of both statutes is the same, and both accomplish practically the same result. In one the filing of the notice is necessary to perfect the lien, and in the other it is necessary to preserve it. In both it is wholly optional with the lienor whether

he will avail himself or not of his right of priority.

The order staying the action in the State court was a proper exercise of power, and should not be disturbed. That action was an interference with assets of the bankrupts in the custody of the bankruptcy court over which the court had previously acquired jurisdiction, and as it was brought without the leave of the court, the order staying its prosecution was properly granted.

*Emslie, supra,* 4 Am.B.R. at 130, 102 F. 291, 292.

In *In re Grissler,* 136 F. 754 (2d Cir. 1905), a supplier of a subcontractor sought to enforce a mechanics' lien against the owner's real estate on which the supplies were incorporated. Two days after creditors petitioned to have the subcontractor adjudicated bankrupt, the supplier filed its notice of lien under State law. After the subcontractor was adjudicated bankrupt and a bankruptcy trustee was appointed, the supplier sent written notice to the general contractor of its commencement of an action to enforce its lien. The bankruptcy trustee obtained a stay of the subcontractor's action to enforce its lien. The Second Circuit reversed and held the lien being asserted against real estate was not in the possession of the bankrupt subcontractor and was not in the custody of the Bankruptcy Court.

This court said in *In re Emslie,* 102 Fed. 291, 42 C.C.A. 350:

A trustee in bankruptcy cannot acquire a better title than the bankrupt had, except as to property which has been transferred contrary to the provisions of the bankruptcy act, and takes the estate subject to all liens and encumbrances other than those enumerated in section 67 (Act July 1, 1898, c. 541, 30 Stat. 564 [U.S.Comp.St.1901, p. 3449]).

This court also decided in that case that the liens enumerated in section 67, in respect to which the trustee acquired a better title than the bankrupt, did not include a mechanic's lien, when notice of the lien had been filed within the statutory period, although not filed until within four months of the institution of proceedings in bankruptcy. If the trustee only acquires such title as the bankrupt had at the date of the adjudication of bankruptcy, and if that title is subject to an inchoate or equitable lien, which may subsequently, without contravening any provision of the bankrupt (sic) act, be perfected by the claimant, if he sees fit to do so within the statutory time, it would seem plain that the trustee's title is impressed with the priority which the claimant is thus at any time within the 90 days prescribed by the statute for filing his notice of lien at liberty to secure.

*Grissler, supra,* 136 F. at 757. *See,* 21 ALR Fed. 635, *Construction and Application of § 67(c)(1)(B) of Bankruptcy Act, Invalidating, Against Trustee in Bankruptcy, Statutory Liens Not Perfected or Enforceable at Date of Bankruptcy Against One Acquiring Rights of Bona Fide Purchaser From Debtor,* § 8, pp. 647–648. *See also, New York–Brooklyn Fuel Corporation v. Fuller,* 11 F.2d 802 (2d Cir.1926) (same result under the 1910 amendment, § 47a of the Bankruptcy Act where notice of mechanic lien was filed post adjudication of bankruptcy but within the time allowed by State law).

The *Grissler* Court also updated the State law basis of its earlier decision *In re Roeber,* 121 F. 449 (2d Cir.1902) (held trustee had priority over a mechanic lienor whose notice of lien was filed after adjudication of bankruptcy), and overruled *Roeber* because applicable State law now recognizes the mechanics' lien is inchoate upon the rendering of services until it is perfected by a notice of lien.

In *Brower v. Schlott (In re Weston),* 68 F.2d 913, 98 A.L.R. 319 (2d Cir.1934), contractors performed public work for the State for which they were not paid prior to bankruptcy. Fourteen mechanics' liens were filed. The bankruptcy trustee petitioned the Referee to: order authorization for the trustee to obtain the balance due from the State; direct all lienors to present their claims to the fund in the Bankruptcy Court for a determination of their validity; and, issue an injunction against the lienors

from proceeding anywhere except before the Bankruptcy Court. The trustee's petition stated that the face amount of the claims exceeded the amount due from the State but that some of the claims were not valid. The trustee's petition was resisted by one of the mechanic lienors who had filed its lien after the filing of the petition in bankruptcy, and who had begun an action in State Court to foreclose on its lien prior to the trustee's petition. On appeal from the District Court's affirmance of the Referee's dismissal of the trustee's petition for lack of jurisdiction, the Second Circuit framed two issues: whether the Bankruptcy Court had obtained constructive possession of the debt due from the State when the bankruptcy petition was filed; and, whether such possession in the Bankruptcy Court prevents the State Court from obtaining jurisdiction. The *Weston* Court answered both in the affirmative:

> [T]he Lien Law contemplates that after notice of the lien, the state holds the debt for the benefit of those entitled thereto. Since when the petition was filed, so far as the record discloses, no lien was asserted, the bankruptcy court's right of constructive possession may not be questioned. The bankruptcy court has jurisdiction to determine the validity of liens and of necessity the sole jurisdiction after possession of the property passes to the trustee.

> Liens not filed before bankruptcy are valid if filed within the period provided by state statute. We are not concerned with the validity of the liens, but the forum in which the validity may be asserted. Even though the lien existed at the time of bankruptcy, it is clear that since the property against which the lien was asserted was in the custody of the bankruptcy court, it could enjoin a later suit to enforce the lien.

*Id.,* 68 F.2d 913, 98 A.L.R. at 322–23.

Other Circuits have likewise employed the relation back rule. In *WWG Industries, Inc. v. United Textiles, Inc. (In re WWG Industries, Inc.),* 772 F.2d 810 (11th Cir.1985), a creditor filed a post-petition notice of labor lien for pre-petition services within the time provided by applicable State law. On the basis of applicable State law, the Eleventh Circuit held the mechanic lienor was superior to the rights of the debtor-in-possession because the mechanic lienor's post-petition perfection related back to the pre-petition date when services were rendered. *See, In re Murphy Electric Company, Inc.,* 78 B.R. 451, 453 (Bkrtcy.D.S.C.1987).

In *Yobe Electric, Inc. v. Graybar Electric Co., Inc. (In re Yobe Electric, Inc.),* 728 F.2d 207, 11 B.C.D. 1009 (3d Cir.1984) per curiam, the Third Circuit answered in the negative the issue of whether a subcontractor's filing of a notice of intention to file a mechanics' lien after the general contractor has filed for bankruptcy violated § 362 by triggering the owner's right to withhold funds due the bankrupt. On a direct appeal from the Bankruptcy Court, *Yobe Electric v. Graybar Electric Co. (In re Yobe Electric),* 30 B.R. 114 (Bkrtcy.W. D.Pa.1983), the Third Circuit affirmed on the basis of the Bankruptcy Court's holding that no violation of the automatic stay occurred because State law permitted the notice of lien to relate back to the date of the installation of the first material, a date prior to the general contractor's bankruptcy. *Accord, Marietta Baptist Tabernacle, Inc. v. Tomberlin Associates Architects, Inc. (In re Marietta Baptist Tabernacle, Inc.),* 576 F.2d 1237, 1239–40 (5th Cir.1978) (same result under § 67(c)(1)(B) of the Bankruptcy Act, 11 U.S.C. § 107(c)(1)(B) (1976), *repealed by* Pub.L. No. 95–598, § 401, 92 Stat. 2683 (1978)).

In the context of contractors' liens, most States have laws that permit the perfection of the lien to relate back to the time of performance or when the inchoate lien first arose. In those States, Bankruptcy Courts have generally held a debtor-in-possession or a bankruptcy trustee may not avoid contractors' liens and the lienor is not prohibited from seeking post-petition perfection of its inchoate contractors' lien. New York Federal decisional law is representative of the treatment of the relation back rule when perfection of a contractors' lien is interrupted by bankruptcy.

In *Armstrong World Industries, Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391 (S.D.N.Y.1983), a construction material supplier obtained a pre-petition State Court judgment against the debtor contractor. Before the supplier could execute on its judgment, the debtor filed a Chapter 11 bankruptcy petition. In reference to § 362, the District Court had this to say about the supplier's failure to timely perfect its liens rights post-petition *vis a vis* those who had:

> The suppliers' right to assert liens under state law is not stayed by the debtor's chapter 11 petition. Rather, § 362(b)(3) and § 546(b) of the Bankruptcy Code permit such liens to 'relate back' to the time of the underlying debt's creation as provided by New York Lien Law. [Supplier's] lien rights apparently were never exercised within the 120 days after furnishing materials allowed by [State Lien Law], and, in any event, in June 1982 the construction projects to which [supplier] had delivered supplies for [debtor] no longer figured in [debtor's] business operations. Thus, despite its judgment against [debtor], [supplier] was in a substantially inferior position to that of the suppliers with potential lien rights involving projects where [debtor] either was owed money or had ongoing contractual obligations. The only remedy available to [supplier], execution on its state-court judgment, was stayed; the remedy available to other suppliers, placing liens on the construction sites to which they had delivered materials for [debtor], was not stayed. Due to the interaction of state and federal law which gives such suppliers potential remedies unaffected by § 362's automatic stay, the suppliers were effectively in a separate class from [supplier's] other unsecured creditors.

*Id.*, 29 B.R. at 393 (S.D.N.Y.1983). *See, Sandusky Foundry & Machine Company v. City of Wickliffe*, 369 F.Supp. 439, 445–46 (W.D.Ky.1972) (supplier was not prevented from filing a timely filed notice of mechanics' lien because of the intervention of contractor's bankruptcy); In *Matter of Chesterfield Developers, Inc.*, 285 F.Supp. 689 (S.D.N.Y.1968) (affirmed Referee's ruling that a notice of mechanics' lien filed subsequent to date of bankruptcy petition for materials and labor rendered prior to the petition is valid as a statutory lien against the hypothetical bona fide purchaser debtor-in-possession under the 1966 amendments to Section 67 of the Bankruptcy Act, 11 U.S.C. § 107).

In *Kraft, KPL v. Fisk Associates (In re Millerlee Corp.)*, 70 B.R. 780, 783 (Bkrtcy. S.D.N.Y.1987) the Court held that despite the debtor tenant's bankruptcy, § 362 did not prevent a mechanics' lienor from filing post-petition State law notice of pendency of mechanics' lien against the debtor and its landlord. Such filing was not a prohibited act to enforce the lien. Rather, it was a permissible act to continue its mechanics' lien and, as such, the notice of pendency related back to the pre-petition date the work was completed. *Accord, Matter of Fiorillo & Company*, 19 B.R. 21, 23–24 (Bkrtcy.S.D.N.Y.1982) (State law relation back perfection procedure, which permits a contractor to file a notice of mechanics' lien in the State Clerk's Office where the property is situated within four months after the completion of work, is not subject to the automatic stay. It is effective against debtor-in-possession so long as it is perfected within the time provided under State law; however, contractor may not enforce its lien).

As indicated previously, the peculiarities of each State's contractors' or mechanics' lien law requires strict attention to their differences. But a survey of other Bankruptcy Court decisions with respect to the relation back rule reveals a general consensus that perfection which relates back may be had despite the intervention of bankruptcy.

In *In re Brittian*, 106 B.R. 665, 666 (Bkrtcy.D.Mt.1989) the Court held that under Montana law, construction lien for which notice of lien was filed post-petition took priority over debtor's hypothetical lien because the construction lien relates back to the pre-petition commencement of work. *See, Schiffer v. Arvada Steel Fabricating Co. (In re Cantrup)*, 38 B.R. 148, 150 (Bkrtcy.D.Colo.1984), (under Colorado law,

a perfected mechanics' lien relates back to the time of the commencement of work and post-petition perfection does not violate automatic stay); *Meek Lumber Yard, Inc. v. Houts (In re Houts)*, 23 B.R. 705, 707 (Bkrtcy.M.D.Mo.1982) (same); *Ansley Park Plumbing & Heating Co., Inc. v. Mikart, Inc. (In re Mikart, Inc.)*, 9 B.R. 144, 147 (Bkrtcy.N.D.Ga.1981), *citing* Bankruptcy Act case of *In re Marietta Baptist Tabernacle, Inc., supra,* 576 F.2d 1237, 1239 (5th Cir.1978) (*Marietta's* adoption of relation back rule survives under the Bankruptcy Code. Held post-petition filing of materialmen's lien does not violate automatic stay when it does not seek to enforce the lien but only preserves it).

In *Rooks v. Peek Construction Company, Inc. (Matter of Peek Construction Company, Inc.)*, 80 B.R. 226, 228–29 (Bkrtcy.N.D.Ala.1986), a general contractor contracted with the owner to erect a home and then contracted with subcontractors for materials to be used on the job. The general contractor later filed bankruptcy. The subcontractors never perfected their materialmen's lien under applicable State law. The Court rejected the subcontractors' defense that the intervention of the general contractor's bankruptcy prevented the perfection of their materialmen's liens. Sections 362(b)(3) and 546(b) permitted post-petition perfection of the lien because State law will relate back their post-petition perfection to a pre-petition date.

In the context of a contractors' lien, the relation back perfection rule will only work if it is recognized under applicable State law. *ATC Systems, Inc. v. Valairco, Inc., (Matter of Valairco, Inc.)*, 9 B.R. 289, 293 (Bkrtcy.D.N.J.1981) (did not recognize the relation back rule under New Jersey law, because a filing of a stop notice does not relate back to the time of supplying the materials).

Where applicable State law recognizes that the filing of notice of lien relates back to the time of supplying the materials or rendering of services, subsequent perfection must be timely had under applicable State law. *See e.g., In re Birdview Satellite Communications, Inc.,* 90 B.R. 465,

467, 470 (Bkrtcy.D.Kan.1988) (relief from stay denied where trustee could avoid mechanics' lien because claimant failed to timely commence perfection by foreclosure or give § 546(b) notice to trustee in addition to filing verified lien statement); *In re Neylon,* 18 B.R. 765, 767 (Bkrtcy.S.D.Ala. 1982); *In re Saberman,* 3 B.R. 316, 318 (Bkrtcy.N.D.Ill.1980) (untimely mechanics' lien did not relate back and was therefore avoided by one standing in the shoes of a bona fide purchaser).

As in *In re Emslie,* 4 Am.B.R. 126, 102 F. 291 (2d Cir.1900), the sufficiency of the notice of a mechanics' lien must comply with the particulars of State law. *Union Manufacturing & Supply Co., Inc. v. Groff (In re Groff),* 624 F.2d 133, 135–36 (10th Cir.1980) (Defective description in the notice of lien statement did not satisfy statute. Lien was not effective against a bankruptcy trustee.); *Mid–America Petroleum, Inc. v. Adkins Supply, Inc. (In re Mid–America Petroleum, Inc.),* 83 B.R. 937, 943 (Bkrtcy.N.D.Tex.1988) (same).

 Vermont Law recognizes and we so treat here, a timely perfected contractors' lien will relate back to the time of recording of a notice of lien or "visible commencement" of work.

### C. *11 U.S.C. § 108(c) Extension of Time.*

 We already know that timely perfection of a contractors' lien is not subject to the Code's automatic stay. Thus, by definition, the contractors' lien perfection period is not tolled. Failure to timely perfect will not be excused because of a debtor's filing bankruptcy. The discussion here is whether the statutory enforcement period governing Vermont's contractors' liens is tolled until after the termination of the automatic stay. 11 U.S.C. § 108(c), **Extension of time,** provides:

(c) Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or

**118**

against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

Section 108(c) was derived from Section 11(f) of the former Bankruptcy Act of 1898.[23] It provided for the *suspension* of a period of limitations rather than an *extension* of a period of limitations as presently provided under the Bankruptcy Code. Former § 11(f) provided:

> The operation of any statute of limitations of the United States or of any State, affecting the debts of a bankrupt provable under this Act, shall be suspended during the period from the date of the filing of the petition in bankruptcy (1) until the expiration of thirty days after the date of the entry of an order denying his discharge; or ... (3) until thirty days after the dismissal of the bankruptcy proceedings, whichever may first occur.

Section 11(f) of the Bankruptcy Act of 1898, reprinted in Appendix 1 *Collier on Bankruptcy*, p. 20 (15th Ed.1989).

Pertinent parts of § 108(c)'s Legislative History comes from the House Report (Reform Act of 1978) which provides:

> Subsection (c) extends the statute of limitations for creditors. Thus, if a creditor is stayed from commencing or continuing an action against the debtor because of the bankruptcy case, then the creditor is

permitted an additional 30 days after notice of the event by which the stay is terminated, whether that event be relief from the automatic stay under proposed 11 U.S.C. 362 or 1301, the closing of the bankruptcy case (which terminates the stay), or the exception from discharge of the debts on which the creditor claims.

*Id.*, H.R.Rep. No. 595, 95th Cong., 1st Sess. 318 (1977), U.S.Code Cong. & Admin.News 1978, p. 6275, reprinted in 4 *Norton Bankruptcy Law and Practice*, p. 77.

The issue addressed in *Morton v. National Bank of New York (In re Morton), supra*, 866 F.2d 561 (2d Cir.1989), was whether by enacting § 108(c), did Congress intend to protect liens against the running of the statute of limitations period during the time the automatic stay is in effect? *Id.*, 866 F.2d at 565. As indicated *supra*, *Morton* held the bank was free to seek an application for an extension of its statutory lien in State Court without violating § 362(a)(4); however, the Court held 11 U.S.C. § 108(c) made such an application unnecessary for the continuation of the bank's lien until after the automatic stay was terminated or was lifted. In reaching that conclusion, *Morton* noted:

> We note that this result is in full harmony with congress's (sic) purpose in enacting § 108(c). Recognizing that a petition in bankruptcy could sometimes give a debtor unfair advantage over a claimant by allowing the debtor to remain under the protection of the automatic stay until the limitation period governing the claimant's action had expired ... congress (sic) acted to solidly preserve the rights of a party 'stayed from commencing or continuing an action against the debtor because of the bankruptcy case.' (sic) S.R.Rep. No. 95–989, 95th Cong., 2d Sess. 30 (1978); H.R. No. 95–595, 95th Cong., 2d Sess. 318 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. It

---

23. Both *Morton* and Collier refer to the source of Section 11(f) as the Chandler Act of 1938. *Morton v. National Bank of New York (In re Morton), supra*, 866 F.2d at 565–66 (2d Cir.1989) ("The predecessor to § 108(c), subdivision f of section 11 of the Chandler Act of 1938"); 2 *Collier on Bankruptcy*, paragraph 108.04, pp.

108–12 (15th Ed.1989) ("Prior to the addition of subdivision f to Section 11 by the Chandler Act of 1938"). Section 11(f) was from the Bankruptcy Act of 1898. Bankruptcy Act, ch. 541, Section 11(f), 30 Stat. 549 (1898) (current version at 11 U.S.C. § 108(c) (Supp. V 1987)).

did so by extending the period for 'commencing or continuing a civil action' against the debtor to, at a minimum, 30 days after termination or expiration of the automatic stay. 11 U.S.C. § 108(c).

*Morton, supra,* 866 F.2d at 566–67.

*Morton* noted the confusion and split among the Bankruptcy Courts on the question whether § 108(c) tolls the expiration of periods governing the life of statutory liens. While siding against the line of cases that hold § 108(c) does not toll the life of such liens, *Morton* cited *Miner Corporation v. Hunters Run Limited Partnership (In re Hunters Run Limited Partnership),* 70 B.R. 297 (W.D.Wash. 1987), as within the nonrecognition camp. Five months after *Morton* was issued, the Ninth Circuit reversed the District Court by following, *inter alia, Morton's* rationale. *Miner Corporation v. Hunters Run Limited Partnership (In re Hunters Run Limited Partnership),* 875 F.2d 1425 (9th Cir.1989).

In *Hunters Run,* a supplier furnished labor and materials to the debtor and recorded a pre-petition notice of lien. Following debtor's petition in bankruptcy filing, the property was sold by Court order with liens transferred to the proceeds. The debtor objected to the supplier's lien on the ground that the supplier failed to preserve it. Both the Bankruptcy Court and the District Court felt obliged to follow precedent [24] which had held the lien in issue was not tolled under the predecessor to § 108(c), Section 11(f), *supra.*

The Ninth Circuit held the lower Courts relied on outdated precedent. Specifically, § 108(c) now applies to "applicable nonbankruptcy law" and not just "statute of limitations" as was expressed under Section 11(f). Additionally, Section 11(f)'s limitation to "debts of a bankrupt" has been replaced by § 108(c)'s "claim against the debtor," which:

> [M]ust be interpreted according to the rules of construction set forth in 11 U.S.C. § 102, which provides in pertinent part:
> In this title—

(2) 'claim against the debtor' includes claim against property of the debtor. 11 U.S.C. § 102(2) (1982)). Thus [debtor's] argument that [supplier's] claim is not 'against the debtor' but is instead 'against the realty or security for the debt' is unavailing.

*Hunters Run, supra,* 875 F.2d at 1427 (brackets supplied for clarity).

The *Hunters Run* Court proceeded to determine the applicability of § 108(c) by looking to see if § 362(a)(4) was germane. The supplier had argued that § 362(a)(4) stayed its ability to bring a foreclosure action and § 108(c), in tandem, tolled its requirement to do so. The debtor countered that § 362(a)(4) did not apply because of § 362(b)(3). The Ninth Circuit disagreed with both parties because the supplier had already perfected its lien pre-petition and the only purpose to be served by the foreclosure action would be for the "enforcement" of its lien, an action prohibited by § 546(b). Thus, while enforcement of the lien is stayed by debtor's bankruptcy, § 108(c) tolled the necessity for foreclosure because the lien is already perfected. *Accord, Meek Lumber Yard, Inc. v. Houts (In re Houts), supra,* 23 B.R. at 707 (Bkrtcy.M.D.Mo.1982) (while post-petition perfection of pre-petition notice of mechanics' lien is not stayed, post-petition enforcement is stayed; however, any statute of limitations period for the lien's enforcement is tolled by § 108(c)).

In *First American Title Co. v. Design Builders, Inc. (Matter of Design Builders, Inc.),* 18 B.R. 392 (Bkrtcy.D.Idaho 1981), First American filed an interpleader action concerning proceeds from the sale of land. The opinion does not inform us as to who owned the land. The trustee sought to avoid certain mechanics' and materialmen's liens against the subject property. The Court held the liens were either perfected pre-petition or were permitted to be perfect post-petition under § 546(b) because they related back to the date of commencement of supplying materials or labor. This could be done without violating the automatic

---

**24.** *In re Warren,* 192 F.Supp. 801 (W.D.Wash. 1961).

stay under § 362(b)(3). The trustee persisted that Idaho law required an additional act of perfection; namely, the commencement of proceedings to enforce the lien within six months after the lien claim has been filed or the lien is lost. The Court held that this 6 month period was for enforcement rather than for perfection within the meaning of § 545 and § 546, and, as such, was tolled by § 108(c). *Id.*, 18 B.R. at 394–95. *See*, Anno. *Extension of Time Under § 108(c) of the Bankruptcy Code (11 USCS § 108(c))*, 83 ALR Fed. 528, at 531.

Thus, we hold the enforcement, as opposed to perfection, of a contractors' lien is tolled under § 108(c) because it is subject to the Code's automatic stay.

IV. Trustee's Avoidance Powers.

A. *11 U.S.C. § 544 "Strong Arm."*

11 U.S.C. § 544, **Trustee as lien creditor and as successor to certain creditors and purchasers,** provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time,

whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

*Id.*, (Nov. 6, 1978, P.L. 95–598, Title I, § 544, 92 Stat. 2596; July 10, 1984, P.L. 98–353, Title III, Subtitle H, § 459, 98 Stat. 377). Section 544 was amended by § 459 of the Bankruptcy Amendments and Federal Judgeship Act of 1984 to make clear that the trustee's rights and powers under this "strong arm clause" are in the disjunctive and not the conjunctive.

The legislative history of § 544 indicates: Subsection (a) is the strong arm clause of current law, now found in Bankruptcy Act § 70c. It gives the trustee the rights of a creditor on a simple contract with a judicial lien on the property of the debtor as of the date of the petition; of a creditor with a writ of execution against the property of the debtor unsatisfied as of the date of the petition; and a bona fide purchaser of the real property of the debtor as of the date of the petition. Simple contract as used here is derived from Bankruptcy Act § 60a(4). The third status, that of a bona fide purchaser of real property, is new. (H. Report. No. 95–595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) p. 370, U.S.Code Cong. & Admin.News 1978, p. 6326).

Reprinted in 4 *Norton Bankruptcy Law and Practice, Annotated Legislative History,* p. 455.

The Supreme Court in *Lewis v. Manufacturers National Bank of Detroit*, 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961), held, under a predecessor[25] to 11 USC

---

25. § 70(c) of the Bankruptcy Act, 11 U.S.C. § 110(c), which, so far as is material here, reads:

The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy, shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists.

§ 544, the trustee acquired the status of an existing or hypothetical lien creditor as of the date of the bankrupt's petition:

> We think that one consistent theory underlies the several versions of § 70c which we have set forth, viz., that the rights of creditors—whether they are existing or hypothetical—to which the trustee succeeds are to be ascertained as of the date of bankruptcy, not at an anterior point of time. That is to say, the trustee acquires the status of a creditor as of the time when the petition in bankruptcy is filed. We read the statutory words "the rights ... of a creditor [existing or hypothetical] then holding a lien" to refer to that date.

*Lewis v. Manufacturers National Bank of Detroit,* 364 U.S. 603, 607, 81 S.Ct. 347, 349, 5 L.Ed.2d 323, 326 (1961) (footnotes omitted). *Accord, In re Vermont Toy Works, Inc.,* 82 B.R. 258 (Bkrtcy.D.Vt. 1987) (appeal pending).

■ Once the trustee assumes the status of a hypothetical lien creditor under § 544, State law is used to determine what a lien creditor's priorities and rights are. *Kors, Inc. v. Howard Bank,* 819 F.2d 19, 22, 16 B.C.D. 162, 164 (2d Cir.1987). We said in *Vermont Toy:*

> As eloquently noted by Colliers on the interaction of Federal status and State rights on the trustee's standing:
>
> "Whether the trustee is entitled to such status and the conditions under which he may attain it, are federal questions governed by the Bankruptcy Code. But the extent of the trustee's rights, remedies and powers as a lien creditor are measured by the substantive law of the jurisdiction governing the property in question. It is not for the state law to determine what rights conferred on lien creditors are transferred to the trustee under the Code. Nor, on the other hand, does section 544(a)(1) or (2) confer on the trustee any greater rights than those accorded by the applicable law to a creditor holding a lien by legal or equitable

proceedings. These are fundamental concepts in the application of the strong-arm clause of section 544(a) which must not be forgotten." 4 *Collier on Bankruptcy,* § 544.02, pp. 544–8, 544–11 (15th Ed.1987) (emphasis in original).

Simply stated, Federal law bestows the hypothetical lien status, State law determines its parameters.

*In re Vermont Toy Works, Inc., supra,* 82 B.R. at 293.

■ Because a timely post-petition perfection of a contractors' lien may relate back to a pre-petition date, and in fact does so in the instant proceeding, the trustee's strong arm powers under § 544 are unavailing.

**B. *11 U.S.C. § 545 Statutory Liens.***

11 U.S.C. § 545, provides in pertinent parts:

> The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien— ... (2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists.

We must determine whether Vermont's contractors' liens, writs of attachment, and, trustee process are statutory liens or judicial liens within the meaning of the Bankruptcy Code.

We already know that Vermont State law treats its contractors' liens as creatures of statutory origin. *Goodro v. Tarkey, supra,* 112 Vt. at 214, 22 A.2d 509. The question remains how the Bankruptcy Code defines Vermont's contractors' liens.

We begin with the Code's definitive sections. "Lien" is defined by 11 U.S.C. § 101(33) as a "charge against or interest in property to secure payment of a debt or performance of an obligation." *Id.* The House and Senate Reports (Reform Act of 1978), provide:

---

Subsection (a) of § 544 is known as the "strong-arm clause" and was derived from § 70 of the Bankruptcy Act of 1898, ch. 541, 30 Stat. 544,

565, repealed by the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2549 (codified at 11 U.S.C. §§ 101–151326 (1982)).

Paragraph (28) [presently redesignated as § 101(33) by § 251 of the Bankruptcy Act of 1986] defines 'lien.' The definition is new and is very broad. A lien is defined as a charge against or interest in property to secure payment of a debt or performance of an obligation. It includes inchoate liens. In general, the concept of lien is divided into three kinds of liens: judicial liens, security interests, and statutory liens. Those three categories are mutually exclusive and are exhaustive except for certain common law liens.

*Id.,* H.R.Rep. No. 595, 95th Cong., 1st Sess. 312 (1977) (refers to paragraph 27 instead of paragraph 28); S.Rep. No. 989, 95th Cong., 2d Sess. 25 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5811, 6269, reprinted in 4 *Norton Bankruptcy Law and Practice,* p. 39 (brackets supplied for clarity).

"Judicial Lien" is defined by 11 U.S.C. § 101(32) as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." *Id.* The House and Senate Reports (Reform Act of 1978), provides:

Paragraph (27) [presently redesignated as § 101(32) by § 251 of the Bankruptcy Act of 1986] defines 'judicial lien.' It is one of three kinds of liens defined in this section. A judicial lien is a lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding.

*Id.,* H.R.Rep. No. 595, 95th Cong., 1st Sess. 312 (1977) (refers to paragraph 26 instead of paragraph 27); S.Rep. No. 989, 95th Cong., 2d Sess. 25 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5811, 6269, reprinted in 4 *Norton Bankruptcy Law and Practice,* p. 38 (brackets supplied for clarity).

"Statutory Lien" is defined by 11 U.S.C. § 101(47) as:

"... lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute

and whether or not such interest or lien is made fully effective by statute."

*Id.* The House and Senate Reports (Reform Act of 1978), provides:

Paragraph (38) [presently redesignated as § 101(47) by § 251 of the Bankruptcy Act of 1986] defines another kind of lien, 'statutory lien.' The definition, derived from current law, states that a statutory lien is a lien arising solely by force of statute on specified circumstances or conditions, and includes a lien of distress for rent (whether statutory, common law, or otherwise). The definition excludes judicial liens and security interests, whether or not they are provided for or are dependent on a statute, and whether or not they are made fully effective by statute. A statutory lien is only one that arises automatically, and is not based on an agreement to give a lien or on judicial action. *Mechanics', materialmen's and warehousemen's liens are examples.* Tax liens are also included in the definition of statutory lien.

*Id.,* H.R.Rep. No. 595, 95th Cong., 1st Sess. 314 (1977) (refers to paragraph 37 instead of paragraph 38); S.Rep. No. 989, 95th Cong., 2d Sess. 27 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5812–13, 6271, reprinted in 4 *Norton Bankruptcy Law and Practice,* p. 50 (brackets supplied for clarity; emphasis ours).

Collier has this to say about statutory liens:

The definition of 'statutory lien' found in Section 1(29a) of the former Act was added in 1966. It resulted from a wholesale revision of Section 67c dealing with statutory liens and their validity as against the trustee. Section 67c dealt with statutory liens only and by virtue of Section 67b (voidable preferences), Section 60a and b was made inapplicable to that type of lien. Section 60 was applicable to consensual liens (what is now known as security interests) however, and it was therefore desirable to add the definitions to the Code.

Section 67c is superseded by section 545 and deals only with statutory liens. Section 547(c)(6), also specifically excludes

statutory liens from falling within the trustee's preference avoidance powers.

The essence of the definition in section 101(47) is the need or lack of it, for an agreement to create a lien. If the lien arises by force of statute, without any prior consent between the parties, it will be deemed a statutory lien. Only one exception does exists; that is, a lien of distress for rent whether or not statutory, is a 'statutory lien.' If the creation of the lien is dependent upon an agreement, it is a security interest even though there is a statute which may govern many aspects of the lien.

There is also a third type of lien from which the statutory lien must be distinguished and that is the judicial lien. This distinction becomes necessary because section 547(d) deals exclusively with judicial liens and section 545 deals exclusively with statutory liens. Section 101(47) defines statutory liens to specifically exclude both judicial liens and security interest, thereby alleviating much confusion. The judicial (sic-statutory) lien is a creature of statute and is not dependent upon an agreement between the parties. More realistically, however, a judicial lien arises by virtue of judicial proceedings in the absence of which there would not be such a lien; yet the statutory lien by definition may arise without any judicial proceeding. *Good examples of statutory liens are: tax liens of the United States and local governments, mechanics' liens, possessory liens of repairmen and garagemen, and liens for wages where granted by statute.* An important matter of note is that reference must be made to state and federal non-bankruptcy law to determine the nature of the lien involved and apply it against the definition of the Code.

2 *Collier on Bankruptcy,* paragraph 101.-47, pp. 101–111—101–113 (15th Ed.1989) (footnotes omitted; emphasis ours); *see,* 4 *Collier on Bankruptcy,* paragraphs 545.-01[1]–545.01[3], pp. 545–2—545–7 (15th Ed. 1989).

Although lengthy, we repeat Norton's excellent discussion on why certain State laws providing for a claimant's perfection of statutory liens were given special treatment by Congress as a major exception to the bankruptcy trustee's avoidance powers, while others such as "naked priorities," "contractual liens" and, "common law" or "constitutional liens" are not so protected:

> The rationale for this treatment of statutory liens is grounded in the history of the bankruptcy statutes and their ongoing interaction with state law provisions. Bankruptcy distributions are designed to reflect independent legislative judgments as to the appropriate priority to be given to various types of claims. However, it is also a basic premise of the federal bankruptcy system that property interests validly created under state laws are, in general, recognized and enforced within a bankruptcy proceeding. The historical development leading to the differential, focused treatment of statutory liens involved a perception that various state legislatures attempted to counteract federal bankruptcy priority provisions by granting specific types of claimants liens arising purely by operation of state statute. Although described in form as liens, the rights created by these statutory provisions were in substance more accurately described as 'naked priorities.' They arise upon the occurrence of a stated event and are applicable, primarily if not exclusively, to contexts involving distribution of the debtor's assets. It was in response to these developments that the inclusion of specific avoidance powers related to statutory liens were enacted in both the Bankruptcy Act and the Code.

[A] statutory lien represents a legislative judgment to grant special protection to selected types of claimants and applies this protection to contexts outside of bankruptcy. While Code § 545 reflects a judgment that disguised priorities are invalid, it also implements a judgment that, within relevant limits relating primarily to the claimant's ability to perfect the lien, other forms of statutory liens are enforceable within bankruptcy.

*In applying Code § 545 ... [t]he primary focus is on liens created by stat-*

ute including, but not limited to mechanics liens, artisan's liens, warehouseman's liens, landlord liens, and tax liens.

The characteristics of the definition of statutory lien are deceptively simple. For any given lien, an analysis of the source and nature of the state-created right is necessary to distinguish a statutory lien from other forms of liens. The difficulty can be identified by comparing contractual liens, commonly described as security interests, and statutory liens. The distinguishing feature of a statutory lien is that it arises 'solely' by force of a statute. Contractual liens, however, most commonly find authorization and clarification in existing state statutes, personal property interests arising under Article 9 of the Uniform Commercial Code being the most prominent illustration. *Liens described as statutory most commonly arise only if a contract exists between the debtor and the lien claimant; mechanic's liens on real estate are a primary example.* In distinguishing between the two, the focus is on the presence of a contract provision granting a property interest to the claimant and on the extent to which that contract provision is a necessary condition precedent for the existence of the lien. If such contractual grant is a necessary precondition, the lien is not a statutory lien even though state statutes define the scope and quality of the property interest in detailed terms....

A similar, but more complex issue of classification arises where an asserted lien is a confluence of contract, statute, and common law or constitutional doctrine. Code § 545 is inapplicable to common law liens—*i.e.*, those liens created by existing case law in a jurisdiction and independent of any state or federal statute.... The result in these cases will necessarily depend on the specific facts and legislative history involved. However, by the terms of the basic definition, the focus is necessarily on the source of origin of the property interest involved. If the statutes merely regulate the terms and enforcement of a pre-existing common law right, no statutory lien is created. If, however, the statute is in the nature of a repeal and reenactment so that the current source of the lien is found in the statue, the avoidance provisions of Code § 545 are applicable. The possibility also exists that two independent liens are present, each to be measured by different provisions of the Code. Where a contract is also present, the possibility of three distinct liens cannot be discounted.

If the asserted interest is a statutory lien, the provisions can be construed as functioning in lieu of Code provisions concerning voidable preferences. Statutory liens are expressly exempted from analysis under the preference section. It should be noted, however, that the exemption does not include transfers in satisfaction of a statutory lien and that, in any event, statutory liens are not exempt from scrutiny under other avoidance provisions in the Code. Thus, for specific example, a statutory lien may be avoided under the provisions of Code § 544 regarding the rights of hypothetical and actual creditors.

2 *Norton Bankruptcy Law and Practice,* Part 31, pp. 1–4 (footnotes omitted, emphasis supplied).

■ The majority of Courts that have confronted the issue of whether mechanics' or contractors' liens are statutory within the meaning of their respective State law and under Code § 101(47) have determined they are. *See e.g., In re Ramsey,* 89 B.R. 680, 681–82 (Bkrtcy.S.D.Ohio 1988); *In re Wisner,* 77 B.R. 395, 398, 16 B.C.D. 694 (Bkrtcy.N.D.N.Y.1987); *In re Piambino,* 45 B.R. 243, 244 (Bkrtcy.S.D.Fla.1984); *Zerger v. Wilmeth (In re Zerger),* 35 B.R. 42, 43 (Bkrtcy.D.Or.1983); *First American Title Co. v. Design Builders, Inc. (Matter of Design Builders, Inc.), supra,* 18 B.R. at 393 (Bkrtcy.D.Idaho 1981); *Reardon v. DeGregorio (Matter of Reardon),* 10 B.R. 697, 699–700 (Bkrtcy.D.Conn.1981); *Evans Products Co. v. Ribeiro (In re Ribeiro),* 7 B.R. 359, 360 (Bkrtcy.D.Mass.1980). We join with the majority and hold Vermont's

contractors' lien is a statutory lien under 11 U.S.C. §§ 101(47) and 545.

We reject the Trustee's position that the mere possibility of post-petition resort to the State Courts for a writ of attachment for perfection of the contractors' lien alters its status as a statutory lien.

In metaphysics there is a difference between being and becoming. Vermont's statutory contractors' lien exists the moment a contractor commences "visible" work or supplies materials to real property. It is inchoate until further steps are taken toward perfection, but nevertheless, it exists, and an intervening bankruptcy cannot change it. But it may be lost by failure of perfection. Bankruptcy will not interfere with such perfection. In Vermont, a contractor or subcontractor creditor is permitted to achieve post-petition perfection by obtaining a timely State Court pre-judgment writ of attachment. The result of a judicial process does not affect the statutory being of a contractors' lien. The obtaining of a writ of attachment to perfect a statutory lien, although judicial in nature, is just another statutory step from inchoateness to perfection. The completion of perfection does not need our review, nor is it required under the Code. Section 546 allows a statutory lien to be perfected, § 362(b)(3) prevents the automatic stay from falling around the lien's perfection.

▆▆ Trustee process is another matter. Trustee process is inherently judicial. No subcontractor, owner, or general contractor is exempt from the automatic stay when they attempt to trustee process estate assets. To obtain trustee process, if appropriate, relief from the automatic stay must be obtained from the Bankruptcy Court. Trustee process is judicial enforcement. To allow it to occur without relief from stay would be a patent violation of the Code's pro rata distribution of assets to creditors. Moreover, trustee process, under appropriate circumstances, may be avoided by the bankruptcy trustee.

Although we hold that subcontractors and general contractors may perfect their liens without our scrutiny, we draw the line at any post-petition attempt by them to enforce their lien. Perfection of a contractors' lien is appropriate as long as it is within the parameters of the State statute. Enforcement of the lien, however, is not appropriate without relief from the automatic stay.

Lastly, we come to the preference power of the trustee.

## C. *11 U.S.C. § 547(c)(6) Statutory Lien Exception to Preference.*

One exception to the Trustee's 11 U.S.C. § 547(b) preference attack is 11 U.S.C. § 547(c)(6) which provides:

> (c) The trustee may not avoid under this section a transfer—
>
> > (6) that is the fixing of a statutory lien that is not avoidable under section 545 of this title.

*Id.* The House and Senate Reports (Reform Act of 1978) provide:

> Paragraph (6) excepts statutory liens validated under section 545 from preference attack. It also protects transfers in satisfaction of such liens, and the fixing of a lien under section 365(j), which protects a vendee whose contract to purchase real property from the debtor is rejected.

*Id.,* H.R.Rep. No. 595, 95th Cong., 1st Sess. 374 (1977); (refers to paragraph 7 instead of paragraph 6); S.Rep. No. 989, 95th Cong., 2d Sess. 88 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5874, 6330, reprinted in 4 *Norton Bankruptcy Law and Practice,* p. 478.

Vern Countryman explained the intention of Congress on the interaction between § 545 and 547(c)(6):

> The (congressional) staff also drafted an exception to section 547 in section 547(c)(6).... The draftsmanship was not superb, because it provided that if the trustee could invalidate a statutory lien under section 545, he also might attack the lien as a preference under section 547 and thus impose a double-kill. Nevertheless, the purpose of section 547(c)(6) was fairly clear. Having stated in section 545 the grounds on which statutory liens would be avoidable, the draftsmen did not intend the liens to be

subject to a second scrutiny under section 547.

Countryman, *The Concept of a Voidable Preference in Bankruptcy*, 38 Vand.L. Rev. 713 at 803 (1985) (footnotes omitted).

This demonstrates beyond peradventure Congress' intention to not only permit contractors to proceed to timely perfect their liens in State Court without having to seek leave of the Code's automatic stay, but also that the perfection of such statutory liens are not subject to the Bankruptcy Trustee's avoidance powers.

## CONCLUSION

We hold the perfection by the contractor lienor of its lien meets the statutory lien exception to the Code's automatic stay. The pre-judgment contractor may proceed to post-petition perfection in State Court by obtaining a pre-judgment State Court writ of attachment so long as it may be timely had under State law. A timely State Court post-petition pre-judgment writ of attachment will relate back to the date the contractor recorded its notice of lien with the Town Clerk's land records, which, in turn, will relate back to the date of the "visible commencement of work or delivery of materials." Provided this perfection relates back to a pre-petition date, the Trustee may not avoid this statutory lien under the strong arm powers or preference provisions. A contractor lienor's enforcement action is stayed by the Codes's automatic stay; however, the need for enforcement is tolled by § 108(c) and preserved until the stay is terminated. The time to perfect the contractors' lien is not tolled by § 108(c), and failure to timely perfect will result in a loss of the lien.

Upon obtaining a State Court pre-judgment writ of attachment, the related back perfected contractor lienor/subcontractor/creditor must submit to the jurisdiction of the Bankruptcy Court and request the automatic stay be lifted, or other relief, before it may proceed to judgment or enforcement against the debtor general contractor and/or the non-debtor owner.

As for the post-petition trustee process against the owner's bank account by the non-debtor subcontractor to which a debtor's contractor's estate may have an interest, such process is a judicial lien, is not excepted from the Code's automatic stay, and is avoidable under the bankruptcy trustee's avoidance powers as a preference.

An appropriate order will be entered.

## ORDER ON DECISION

This Court, having this day entered its Memorandum of Decision in the above referenced adversary proceeding, NOW ORDERS the relief requested by the Trustee to avoid Hinesburg Sand and Gravel, Inc.'s contractors' lien and writ of attachment is DENIED. The relief by the Trustee to avoid Hinesburg Sand and Gravel, Inc.'s trustee process is GRANTED. IT IS FURTHER ORDERED the relief requested by the Trustee and the Town of Colchester, Vermont to avoid Commercial Industrial Electric, Inc.'s contractors' lien is GRANTED. IT IS FURTHER ORDERED the Clerk of the Bankruptcy Court is directed to enter judgment in accordance with this Order.